**Stephen Henry HOPPER, Appellant**

v.

**The STATE of Texas**

**NO. PD-0703-16**

Court of Criminal Appeals of Texas.

Delivered: June 7, 2017

ATTORNEYS FOR APPELLANT: Sarah V. Wood, Harris County Public Defender's Office, 1201 Franklin St., 13th Floor, Houston, TX 77002.

ATTORNEYS FOR THE STATE: Clinton Morgan, Assistant District Attorney, 1201 Franklin, Suite 600, Houston, TX 77002.

Keller, P.J., delivered the opinion of the Court in which Hervey, Alcala, Richardson, Yeary, Keel, and Walker, JJ., joined.

In this case, we consider how a court should weigh a defendant's failure to exercise his right to a speedy trial under the Interstate Agreement on Detainers when analyzing a claim that he was denied his Sixth Amendment right to a speedy trial. Appellant was indicted in 1993 for an offense that he committed in Texas, but his trial did not take place until 2015. During most of that period of time, he was incarcerated in Nebraska for crimes he had committed there. Although he was informed of his right to be transferred to Texas under the Interstate Agreement on Detainers (IAD) for a speedy disposition of his Texas charge, he never invoked that right. The State also had a right to obtain appellant's presence in Texas under the IAD but did not invoke that right until 2013. Appellant contended at trial and on appeal that he was denied his constitutional right to a speedy trial. Both courts below rejected that contention. In rejecting appellant's complaint, the court of appeals assessed and balanced the four factors articulated by the Supreme Court in *Barker v. Wingo*:[1] (1) the length of delay, (2) the reasons for delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. Although the court of appeals found that the length-of-delay factor weighed heavily against the State and that the reasons-for-delay factor weighed against the State (but not heavily), the court also found that the assertion-of-right factor weighed heavily against the defendant and that the prejudice factor did not weigh in the defendant's favor. We agree with most of the court of appeals's reasoning but determine that, because the defendant and the State had an equal ability to bring the case to a speedy resolution by invoking the IAD, both parties are equally at fault under the reasons-for-delay factor. Consequently, that factor does not weigh against either party.

## I. BACKGROUND

### A. The Period of Delay

On August 28, 1993, a Harris County assistant district attorney filed a complaint

1. 407 U.S. 514, 530-32, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

alleging that appellant raped a woman at knifepoint in Harris County, Texas.[2] The complaint also alleged that the victim was a self-employed massage therapist, that appellant identified himself to her by name and address, that appellant made an appointment with her to give him a massage at his home, and that he sexually assaulted her after she entered his home. A warrant for appellant's arrest was issued the next day. At some point, appellant traveled to Nebraska and was arrested for offenses he had committed there. On September 21, 1993, the Harris County Sheriff's Office filed a detainer on appellant in Nebraska. Appellant was indicted for the Texas offense on November 4, 1993.

On April 11, 1995, appellant was sentenced to 50 years without parole and 20-60 years, stacked, on the Nebraska offenses. On April 20, 1995, the Harris County Sheriff's Office filed a detainer with the Nebraska Department of Corrections.

On May 5, 1995, appellant signed a form that informed him of the detainer for the Texas offense and of his right under the IAD to be transferred to Texas for a speedy disposition of the charge:

> Pursuant to the Agreement on Detainers, you are hereby informed that the following are the untried indictments, informations, or complaints against you concerning which the undersigned has knowledge, and the source and contents of each:
>
> Harris County Sheriff's Office, Houston, Texas
>
> Aggravated Sexual Assault
>
> You are hereby further advised that by the provisions of said Agreement you have the right to request the appropriate prosecuting officer of the jurisdiction in which any such indictment, information or complaint is pending and the appropriate court that a final disposition be made thereof. You shall then be brought to trial within 180 days, unless extended pursuant to provisions of the Agreement, after you have caused to be delivered to said prosecuting officer and said court written notice of the place of your imprisonment and your said request, together with a certificate of the custodial authority as more fully set forth in said Agreement. However, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

\* \* \*

> Should you desire such a request for final disposition of any untried indictment, information or complaint, you are to notify the Special Services Unit, Central Office, Department of Correctional Services.

Kim Bryant became the extradition administrator for Harris County in December of 1999. When she discovered that a defendant was incarcerated in an out-of-state facility, her routine was to contact the facility to determine if the defendant "wants to initiate IAD." If she received a "no" answer, then her routine was to speak to the prosecutor and ask if he wanted to initiate IAD. Bryant testified that she followed this routine with respect to appellant's case.[3]

On September 4, 2013, the Harris County District Attorney filed a request to

---

**2.** The offense was alleged to have occurred on August 7 of the same year.

**3.** Over a hearsay objection, Bryant testified at the speedy-trial hearing that the facility called her back and told her that "no, he didn't want to pursue it." She did not remember the time frame for when she received this response. For purposes of this opinion, we will assume that the hearsay objection was valid and that the trial court should not have considered that evidence.

transfer appellant to Texas pursuant to the IAD. Later that month, appellant was presented with paperwork relating to this transfer request, but he refused to sign it. One of the line items that he refused to sign was a waiver of extradition.[4] Appellant was transferred to Harris County on October 19, 2013.

On March 18, 2014, appellant moved to dismiss the indictment for failure to afford him a speedy trial. In June of that year, a hearing was held on the motion. In addition to the facts outlined above, there was testimony that the Harris County District Attorney's Office engaged in periodic reviews to determine whether an out-of-state defendant's case was one that warranted the invocation of the IAD. Considerations in that review included the defendant's projected release date in the other state, whether the State could locate witnesses, and whether the case had prosecutorial merit. Priority was placed on murder cases, followed by cases involving aggravated sexual assault. There was also testimony that it cost the county money to bring the inmate to Texas and to return him to the sending state.

There was also testimony that the victim was still willing and available to testify, and the State indicated that the evidence that was originally submitted to the Medical Examiner's Office for testing still existed. But, the State stipulated, all other physical or documentary evidence—including the rape kit, the victim's clothes, a shirt allegedly belonging to appellant, and the original photo lineup—had been lost or destroyed. Appellant did not testify at the hearing.

The trial court denied appellant's motion to dismiss, and appellant pled guilty in exchange for a sentence of thirty years in prison, to run concurrently with his other sentences.

### B. Appeal

On appeal, appellant claimed that the delay in bringing his case to trial violated his Sixth Amendment right to a speedy trial. In analyzing this claim, the court of appeals assessed and balanced the *Barker* factors.[5] The court of appeals concluded that the delay of more than twenty years between indictment and appellant's motion to dismiss was "more than enough to trigger a full enquiry into the remaining factors" and that, given this lengthy passage of time, the length-of-delay factor weighed heavily against the State.[6]

In assessing the reasons for delay, the court of appeals determined that the delay was composed of two distinct periods.[7] The first period was from the time the Texas indictment was returned until the end of appellant's trial in Nebraska—a span of nearly one-and-a-half years.[8] The court determined that the State had a valid reason for this period of delay because appellant was being actively prosecuted by another sovereign and the interests of comity justified waiting for that prosecution to conclude.[9]

The second period was from the time the Harris County Sheriff's Office filed the second detainer until appellant filed his

---

4. The phrase "Refused to sign" is filled in on four different signature lines, including one related to the appointment of counsel and another related to the filing of an application for a writ of habeas corpus.

5. *Hopper v. State*, 495 S.W.3d 468, 473 (Tex. App.—Houston [14th Dist.] 2016).

6. *Id.* at 474.

7. *Id.*

8. *Id.*

9. *Id.* at 474-75.

motion to dismiss—a span greater than eighteen-and-a-half years.[10] Appellant had contended that the State acted in bad faith during this period of delay because it knew of appellant's whereabouts, but the court of appeals concluded that that was not enough to establish bad faith.[11] Instead, the court determined that a finding of bad faith requires "evidence that the State engaged in delay for an impermissible reason, such as to obtain an unfair tactical advantage," [12] and the record contained no such evidence.[13] The State contended that the delay should not count against it at all because, by filing a detainer in Nebraska, the State put appellant on notice that he could have demanded a trial in Texas.[14] The court rejected this contention on the basis that a defendant has no duty to bring himself to trial and that this "primary burden" rests firmly with the State.[15] The court of appeals further concluded that our decision in *Dragoo v. State* [16] was inconsistent with the State's position:

> In *Dragoo*, the defendant was serving a life sentence in Texas while there was still another charge from Texas pending against him. Because the defendant was already in a Texas prison, the State had no reason to file a detainer under the IAD. The defendant did not insist on a speedy trial until after a delay of three

and a half years, even though the defendant was aware of the pending charge, he was represented by counsel, and he could have demanded a trial much earlier. The State did not offer any reason for the delay, and the Court of Criminal Appeals held that this factor weighed in favor of finding a speedy-trial violation. The facts of appellant's case are not more favorable to the State simply because the State filed a detainer. In both this case and *Dragoo*, the defendant was aware of the pending charge, and the State was aware of the defendant's exact location. Also in both cases, the defendant could have demanded a speedy trial, by virtue of his knowledge of the pending charge, and the State could have compelled the defendant's presence for trial, by virtue of the defendant's status as a prisoner. We see no reason why our analysis should depart from *Dragoo*.[17]

Having rejected both appellant's and the State's arguments regarding how to weigh the reasons for delay, the court of appeals took the middle ground and held that the reasons-for-delay factor weighed against the State, but not heavily.[18]

Regarding the assertion-of-right factor, the court of appeals held that appellant

10. *Id.* at 474.

11. *Id.* at 475.

12. *Id.* (citing *Doggett v. United States*, 505 U.S. 647, 656, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)). *See also Doggett, supra* ("The Government concedes, on the other hand, that Doggett would prevail if he could show that the Government had intentionally held back in its prosecution of him to gain some impermissible advantage at trial. That we cannot doubt. *Barker* stressed that official bad faith in causing delay will be weighed heavily against the government, and a bad-faith delay the length of this negligent one would present an overwhelming case for dismissal.") (citations omitted).

13. *Hopper*, 495 S.W.3d at 475.

14. *Id.*

15. *Id.* (citing *Barker*, 407 U.S. at 527, 529, 92 S.Ct. 2182; *Doggett*, 505 U.S. at 657, 112 S.Ct. 2686).

16. 96 S.W.3d 308 (Tex. Crim. App. 2003).

17. *Hopper*, 495 S.W.3d at 475-76 (citations omitted) (citing *Dragoo*, 96 S.W.3d at 311, 314).

18. *Id.* at 476.

"sat on his rights for more than eighteen and a half years, nearly the same amount of time as the State delayed in bringing appellant to trial."[19] Appellant argued that the assertion-of-right factor should not weigh against him at all because his only notice that he might need to assert his right was conveyed by the IAD form, which he signed when he was not represented by counsel and which was, he claimed, full of legalese.[20] Setting out relevant portions of the text of the IAD form,[21] the court of appeals observed that appellant had "not cited to any case law holding that this language is legally insufficient to apprise the defendant of his right to demand a trial."[22] Rather, "[b]y its plain terms, the form advises a defendant that he has a right to request a final disposition of an indictment pending in another state."[23] Although the form could have been "worded more simply," the court was unwilling to say that the form was insufficient as a matter of law to provide notice, "especially where such a holding could have ramifications in every jurisdiction that has adopted the IAD."[24] The court of appeals further observed that, had appellant testified at the speedy-trial hearing, the trial court could have considered whether appellant actually understood the form when he signed it.[25] But appellant did not testify, or produce any other evidence that he did not understand the form, so "the trial court was free to determine that appellant fully understood his rights, even without the benefit of representation."[26]

The court of appeals concluded that appellant's failure to assert his right to a speedy trial for over eighteen-and-a-half years was "strong evidence that appellant did not actually want a trial."[27] Buttressing this evidence was the fact that appellant refused to sign a waiver of extradition after the State initiated IAD procedures.[28] The court concluded that the assertion-of-right factor weighed heavily against appellant.

Finally, the court of appeals considered the prejudice-to-the-defendant factor, assessing it in light of the interests the right to a speedy trial was designed to protect.[29] The court looked at the three interests identified by the Supreme Court: (1) preventing oppressive pretrial incarceration, (2) minimizing the defendant's anxiety and concern, and (3) limiting the possibility that the defense will be impaired.[30] The court determined that appellant did not contend that the first two interests were in play but focused solely on whether his defense was impaired.[31] The court rejected appellant's contention that the length of delay should give rise to presumed prejudice because that presumption was negated by appellant's long acquiescence in the delay.[32] With respect to whether actual prejudice had been shown, the court pointed out that appellant's motion to dismiss "offered a bare, single sentence explana-

19. *Id.*

20. *Id.*

21. *See id.* at 477. *See also supra* at part I.A.

22. *Hopper, supra.*

23. *Id.*

24. *Id.*

25. *Id.*

26. *Id.*

27. *Id.* at 477-78.

28. *Id.* at 478.

29. *Id.*

30. *Id.*

31. *Id.*

32. *Id.*

tion of prejudice"—that "exculpatory witnesses likely would have become unavailable or have forgotten facts that would have proven beneficial to the Defendant."[33] The court observed that, despite the fact that appellant was in the best position to support this claim, he called no witnesses to explain who might have been available to testify for the defense but for the State's delay.[34] Although defense counsel referred to the State's stipulation that certain evidence had been lost or destroyed, the court of appeals concluded that the "argument cuts both ways" because "the lost evidence could have been incriminating or exculpatory."[35] "Without knowing the quality of the evidence," the court of appeals said, "appellant can only speculate that the loss has impaired his defense."[36]

The court also faulted appellant for failing to identify his defensive theory.[37] The court pointed out that the complaint had alleged that the victim was a massage therapist that appellant invited over to his apartment.[38] If the defense at trial would have been that the victim identified the wrong perpetrator, then the missing rape kit, clothing, and photo lineup would have been relevant.[39] But if the defense at trial would have been that the sex was consensual, then none of that evidence would

have been relevant.[40] "Because appellant never identified a theory," the court of appeals held, "the trial court was free to find that appellant did not prove that his defense was impaired."[41] Because appellant had failed to make a *prima facie* showing of prejudice, the court of appeals concluded that the prejudice-to-the-defendant factor did not weigh in his favor.[42]

In balancing the factors, the court of appeals acknowledged "that there is fault to be shared by both sides."[43] The court determined that the length-of-delay and reasons-for-delay factors favored appellant but that those factors were largely offset by the assertion-of-right factor, which favored the State, and that the prejudice-to-the-defendant factor did not alter the balance.[44] Consequently, the court of appeals held that the balance of factors did not establish a violation of appellant's constitutional right to a speedy trial.[45] The court of appeals affirmed the conviction.[46]

## II. ANALYSIS

### A. Speedy-Trial Law

The Sixth Amendment guarantees a defendant in a criminal prosecution the right to a speedy trial.[47] "The speedy-trial right is amorphous, slippery, and nec-

---

33. *Id.* at 479.

34. *Id.*

35. *Id.* (citing *United States v. Loud Hawk*, 474 U.S. 302, 315, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986)).

36. *Id.*

37. *Id.*

38. *Id.*

39. *Id.* at 480.

40. *Id.*

41. *Id.* at 480-81.

42. *Id.* at 481.

43. *Id.*

44. *Id.*

45. *Id.*

46. *Id.* at 482.

47. U.S. CONST. amend. 6; *Vermont v. Brillon*, 556 U.S. 81, 89, 129 S.Ct. 1283, 173 L.Ed.2d 231 (2009).

essarily relative."[48] Rejecting inflexible approaches, the Supreme Court has established a balancing test "in which the conduct of both the prosecution and the defendant are weighed."[49] Courts are to consider the length of delay, the reasons for delay, to what extent the defendant has asserted his right, and any prejudice suffered by the defendant.[50]

 The length of delay is a double inquiry: A court must consider whether the delay is sufficiently long to even trigger a further analysis under the *Barker* factors, and if it is, then the court must consider to what extent it stretches beyond this triggering length.[51] In assessing the reasons for delay, a court must accord different weights to different reasons, and it must ask "whether the government or the criminal defendant is more to blame for the delay."[52] Deliberate delay to hamper the defense is weighed heavily against the government while more neutral reasons such as negligence or overcrowded courts weigh against the government but less heavily.[53] Delay caused by the defense weighs against the defendant.[54] A defendant has a responsibility to assert his right to a speedy trial.[55] Although a defendant's failure to assert his right is not automatically fatal to a speedy-trial claim, a failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.[56] The prejudice factor should be assessed in light of the interests the right to a speedy trial was designed to protect: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired.[57] Affirmative proof of particularized prejudice is not essential to every speedy trial claim because "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify . . . and its importance increases with the length of delay."[58]

### B. Interstate Agreement on Detainers (IAD)

 The IAD is a compact between states (and some other jurisdictions)[59] that enables a party state to obtain custody of an out-of-state prisoner for prosecution and imposes duties to ensure a prisoner's quick return to the sending state.[60] Texas has codified the IAD in the Code of Criminal Procedure.[61] If a defendant is serving a term of imprisonment in another state and the State of Texas files a detainer in that other state, both the State of Texas and the defendant have a right to demand the transfer of the defendant to Texas for a

---

48. *Brillon, supra* (internal quotation marks omitted).

49. *Id.* at 90, 129 S.Ct. 1283.

50. *Barker*, 407 U.S. at 530-32, 92 S.Ct. 2182.

51. *Doggett*, 505 U.S. at 651-52, 112 S.Ct. 2686.

52. *Brillon*, 556 U.S. at 90, 129 S.Ct. 1283 (brackets omitted).

53. *Id.*

54. *Id.*

55. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182.

56. *Id.* at 532, 92 S.Ct. 2182.

57. *Id.*

58. *Doggett*, 505 U.S. at 655-56, 112 S.Ct. 2686.

59. The Federal Government and District of Columbia are parties to the IAD. *See Alabama v. Bozeman*, 533 U.S. 146, 148, 121 S.Ct. 2079, 150 L.Ed.2d 188 (2001).

60. *State v. Williams*, 938 S.W.2d 456, 460 (Tex. Crim. App. 1997).

61. Tex. Code Crim. Proc. art. 51.14 arts. I–IX.

final disposition of the Texas charge.[62] If the defendant initiates a demand under the IAD, then the State of Texas must bring the defendant to trial within 180 days after the prosecuting officer and the appropriate court receive the defendant's demand.[63] If the State of Texas initiates a demand under the IAD, then the State of Texas must bring the defendant to trial within 120 days of his arrival in Texas. The IAD accords the governor of the state that holds the prisoner the power to disapprove a demand initiated by the State [64] but accords no such power with respect to a demand initiated by the defendant.[65]

### C. Reasons for Delay: Defendant's Failure to Invoke IAD

■ The State contends that none of the time appellant spent confined in Nebraska should count against the State under the reasons-for-delay factor because the IAD gave appellant the right to effectuate his transfer to Texas and to obtain a speedy trial, and appellant was aware of this right but chose not to exercise it. The State relies upon several cases from other jurisdictions to support this contention [66] but also acknowledges other cases that seem contrary to its claim.[67] Appellant points to the Supreme Court's statement

---

**62.** *Id.* arts. III(a), IV(a).

**63.** *Id.* art. III(a).

**64.** *Id.* art. IV(a) (During 30 days after receipt of the demand, "the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner."). *See also Williams*, 938 S.W.2d at 461.

**65.** *See* Art. 51.14 art. III, *passim.*

**66.** *Jenkins v. Purkett*, 963 F.2d 1117, 1118 (8th Cir. 1992) ("lack of timely notice" to prosecutor of the defendant's demand for transfer under the IAD "was good reason for the delay"); *Crawford v. State*, 669 N.E.2d 141, 146 (Ind. 1996) ("It was then incumbent upon defendant to serve the State with a written notice requesting final disposition of the charge. Defendant took no measures to have such a request delivered to the State until May 24, 1993. Thus during the time period from June 15, 1990, to May 24, 1993, the defendant waived any right to assert delay in the disposition of his case by electing not to invoke his rights under the Interstate Agreement on Detainers.") (citation omitted); *State v. Grant*, 227 Mont. 181, 186, 738 P.2d 106, 109 (1987) ("The time chargeable to defendant began on January 22, 1985, when the State of Montana issued the first detainer to defendant and the State of Idaho notifying them of charges pending against defendant in Montana. That time, as chargeable to defendant, ceased to run on June 19, 1985[,] when defendant asserted his right to a speedy trial by requesting final disposition of the charges against him in Montana.... Knowing that charges were pending against him in Montana, it was up to defendant to request speedy and final disposition of the charges against him."); *Windham v. State*, 118 Nev. 226, 232-33, 43 P.3d 993, 998 (2002) ("After being released by Reno police, Windham immediately fled to California, and thereafter he was arrested on new felony charges, convicted, and sentenced to serve a term of imprisonment in the California State Prison. In addition, Windham's first packet [requesting transfer under the IAD] did not comply with the Agreement [on interstate detainers], creating further delay.") (bracketed material inserted); *State v. Goodroad*, 521 N.W.2d 433, 439 (S.D. 1994) ("The reason for the twenty-month delay from indictment until extradition from Minnesota is attributable either to Goodroad's flight from this jurisdiction to avoid prosecution or his failure to demand disposition of the charges against him" under the IAD.).

**67.** *State v. Beauchene*, 541 A.2d 914, 918-19 (Me. 1988) ("[T]he State concedes that a major portion of it [the pretrial delay] resulted from the State's negligence in not actively pursuing the return of defendant to Maine," but holding that defendant's "failure to assert his own available rights under the Interstate Compact on Detainers to get a prompt trial" weigh against the defendant on the assertion-of-right factor and "militate[s] against any conclusion that a constitutional violation has occurred.") (bracketed material inserted); *Wilson v. State*, 281 Md. 640, 655, 382 A.2d

in *Barker* that the Sixth Amendment "places the primary burden on the courts and prosecutors to assure that cases are brought to trial"[68] and to our statement in *Gonzales v. State* that taking into account the defendant's conduct in the reason-for-delay factor "conflates the State's reasons for delay with whether [the defendant] timely asserted his right to a speedy trial."[69]

The Supreme Court has not ruled on the issue in this case, but in *Smith v. Hooey*, the Court has held that a defendant's custody in another jurisdiction does not by itself relieve the state of the obligation to timely bring the defendant to trial.[70] Upon an out-of-state prisoner's demand for a speedy trial, a state must "make a diligent, good faith effort to bring him before" the appropriate court for trial.[71] This admonition by the Supreme Court is not, however, on point in the present case because appellant made no demand for a speedy trial in the Texas case while he was incarcerated in Nebraska.

■ Moreover, *Smith*, arising from a Texas prosecution, was decided before Texas adopted the IAD.[72] The fact that the IAD was unavailable to Smith was one reason his numerous requests over the years for a speedy trial went unheeded.[73] Similarly, the IAD did not provide a remedy for the defendant in *Dragoo*—the case relied upon by the court of appeals—because he was confined in prison in Texas,[74] and the IAD applies only to a prisoner confined in another state.[75] The defendants in *Smith* and *Dragoo* had no mechanism to

1053, 1064 (1978) (The defendant "concedes, however, that there is nothing in either the docket entries or the exhibits contained in the record which suggests that he requested a speedy trial or filed any forms under the Interstate Detainer Act.... This, of course, did not relieve the State of its duty which it has, independent of the Act, to bring Wilson to trial.") (brackets and internal quotation marks omitted); *People v. Rodriguez*, 47 Mich. App. 483, 488, 209 N.W.2d 441, 444 (1973) ("If the state makes a reasonably timely effort to extradite an out-of-state prisoner and is unsuccessful, then the state has done what it can. However, where no effort is made, as in this case, the requirements of the law have not been met.... The people argue that under the interstate agreement on detainers, the defendant could have and failed to make a demand to be returned to Michigan for trial.... However, we do not perceive the interstate agreement as being the sole codification of an accused's rights to a speedy trial when he is imprisoned on another charge in a foreign jurisdiction."); *State v. Newcomer*, 48 Wash. App. 83, 87, 737 P.2d 1285, 1288 (1987) ("While the agreement itself places no responsibility on a receiving state to bring the prisoner to trial, absent an article 3 request by the prisoner or actual custody in the receiving state pursuant to an article 4 temporary custody request, the fact a defendant is in prison in another jurisdiction and the minimal re-

quirements of the IAD provisions do not relieve the State of its Sixth Amendment responsibilities.").

68. 407 U.S. at 529, 92 S.Ct. 2182.

69. 435 S.W.3d 801, 810 (Tex. Crim. App. 2014).

70. 393 U.S. 374, 382-83, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969).

71. *Id.* at 383, 89 S.Ct. 575.

72. *See* Acts 1975, 64th Leg., p. 920, ch. 343, § 1, eff. June 19, 1975 (adopting IAD).

73. *See Smith*, 393 U.S. at 375, 89 S.Ct. 575 ("Thereafter, for the next six years, the petitioner, by various letters, and more formal so-called motions, continued periodically to ask that he be brought to trial.") (internal quotation marks omitted).

74. 96 S.W.3d at 311.

75. *See* Art. 51.14 art. III(a) ("whenever during the continuance of the term of imprisonment there is pending in any *other* party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged") (emphasis added).

enforce a speedy trial, other than to invoke the "amorphous, slippery, and necessarily relative" speedy-trial guarantee in the Sixth Amendment.[76] By contrast, the IAD's remedy was available to appellant, and that remedy was not only specific, but it was also guaranteed,[77] while the State had no such guarantee, though the State's likelihood of success in obtaining a prisoner through the IAD is high.[78]

Appellant relies on *Gonzales*, but *Gonzales* is not like this case.[79] Authorities had forgotten about Mr. Gonzales, and he kept himself from coming to their attention by not renewing his driver's license.[80] We held that this conduct did not weigh against him on the reasons-for-delay factor.[81] But even if he had spoken up, he—like the defendants in *Smith* and *Dragoo*—did not have the specific and guaranteed remedy provided by the IAD.

█ Moreover, a defendant's failure to engage in routine tasks that might call himself to the attention of the authorities is not the kind of affirmative conduct that would make him partially responsible for delay. The same is not necessarily true of criminal conduct that results in a defendant's incarceration in another jurisdiction. By leaving Texas and committing crimes in Nebraska, appellant created at least a modest impediment to prosecution in Texas. Although that impediment was likely to be easily surmounted by a request under the IAD, such a request was not without costs. Aside from the actual cost in money, the prosecution of the case would be subject to the IAD's requirements, including its specific time requirements, that might be far more restrictive than required by the Sixth Amendment's speedy-trial clause.[82]

And appellant was timely notified of his Texas charge and of his right to demand a disposition of that charge under the IAD. The IAD form explained that the charge would be disposed of in 180 days unless a continuance was granted, and appellant signed the form. We agree with the court of appeals that the language was clear enough to inform a defendant of his IAD rights, and there is no testimony that the language of the form was too complex for appellant to understand. Moreover, when faced with the State's IAD demand and the opportunity to waive extradition, ap-

---

76. *See Brillon*, 556 U.S. at 89, 129 S.Ct. 1283.

77. *See supra* at n.65. In *State v. Williams*, the State challenged the speedy-trial provisions of the IAD as being unconstitutional in violation of the Separation of Powers provision of the Texas Constitution. 938 S.W.2d at 457-58. We rejected that contention with respect to requests made by the prosecutor under Article IV of the IAD on the ground that the prosecutor contractually submitted to the IAD upon requesting transfer of the out-of-state prisoner. *Id.* at 460-62. We have not had occasion to address the constitutionality of the statute with respect to requests by a defendant under Article III, but there is at least some reasoning in *Williams* that might be a basis for holding that Article III requests do not violate Separation of Powers. *See id.* at 460-62. In any event, absent a challenge to the constitutionality of a statute, we presume the statute is constitutional. *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) ("Statutes are presumed to be constitutional until it is determined otherwise. The State and the trial court should not be required to anticipate that a statute may later be held to be unconstitutional.").

78. *See supra* at n.64.

79. 435 S.W.3d at 805-06.

80. *See id.* at 805, 807.

81. *Id.* at 810.

82. *See Williams*, 938 S.W.2d at 462 ("If the prosecutor needs time to investigate, he can simply refrain from filing a request [under the IAD] until he has gathered enough information to proceed quickly to trial.").

pellant refused to sign a waiver of extradition that would have made his transfer to Texas easier.

Given that appellant created an impediment to his prosecution that he could have easily lifted that barrier by invoking the IAD that lifting that barrier would also have imposed time requirements that would have ensured a speedy trial, and that the State's invocation of the IAD was not guaranteed to succeed, and if successful, had costs, we conclude that appellant's failure to invoke the IAD did in fact contribute to the delay so as to be relevant to the reasons-for-delay factor. This conclusion does not absolve the State of responsibility for failing to invoke the IAD before 2013; it also shoulders blame for failing to even attempt to procure appellant before then. We conclude that both parties are equally blameworthy for the period of delay from the time appellant was convicted in Nebraska (April 1995) to the time the State filed its IAD demand (September 2013). Because the parties are equally blameworthy for that period of delay, the reasons-for-delay factor is essentially neutral.

### D. Other Matters

■ Appellant contends that the State acted in bad faith because it knew appellant was incarcerated in Nebraska and it engaged in strategic considerations in deciding whether to initiate an IAD demand in appellants' case. We agree with the court of appeals that a finding of bad faith in the speedy trial context requires a showing that the State was trying to gain a tactical advantage in the defendant's case,[83] and the record is devoid of any evidence of that. The fact that the State prioritized certain types of cases in determining whether to make an IAD demand does not establish that the State was trying to gain an advantage in the defendant's case. Although there was testimony that the State considered whether it could find witnesses, there was no suggestion that the State refrained from making an IAD demand so that witnesses or evidence could disappear, nor was there any testimony that the State had any evidence-based reason for not making an IAD demand in appellant's case.

■ Needless to say, we also agree with the court of appeals that the assertion-of-right factor weighs heavily against appellant. Because we have determined that the record supports a conclusion that appellant knew about his Texas charge, his complete failure to assert his right to a speedy trial for more than eighteen years suggests that he did not really want a speedy trial.[84] The record also supports a conclusion that appellant knew that he had a specific means of obtaining a speedy

**83.** See Brillon, 556 U.S. at 90, 129 S.Ct. 1283 ("Deliberate delay 'to hamper the defense' weighs heavily against the prosecution."); Arizona v. Youngblood, 488 U.S. 51, 57, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) ("Our decisions in related areas have stressed the importance for constitutional purposes of good or bad faith on the part of the Government when the claim is based on loss of evidence attributable to the Government. In United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), we said that '[n]o actual prejudice to the conduct of the defense is alleged or proved, and there is no showing that the Government intentionally delayed to gain some tactical advantage over appellees or to harass them.' ") (brackets in Youngblood).

**84.** See Dragoo, 96 S.W.3d at 314 ("[A] defendant's lack of a timely demand for a speedy trial indicates strongly that he did not really want a speedy trial.... [T]he longer delay becomes, the more likely a defendant who wished a speedy trial would take some action to obtain it. Thus inaction weighs more heavily against a violation the longer the delay becomes.") (internal quotation marks omitted).

trial, yet failed to employ that means, and this fact further weighs the assertion-of-right factor against him.

We also agree that the prejudice-to-the-defendant factor does not weigh in appellant's favor. Any presumptive prejudice due to the passage of time was extenuated by appellant's acquiescence in the delay[85] and even further extenuated by appellant's failure to employ a remedy that would have guaranteed him a speedy trial. Further, we agree that appellant has not shown any particularized prejudice. Given the complaint's allegations that appellant called the victim over to his apartment to give him a massage, it seems highly unlikely that identity would be an issue in the case. That leaves the issue of consent, but none of the missing evidence appears to be material to that issue.

We conclude that appellant's constitutional right to a speedy trial was not violated. The judgment of the court of appeals is affirmed.

Newell, J., concurred.

Keasler, J., not participating.

85. *See id.* at 315 ("Still, this presumption of prejudice is extenuated by appellant's long-time acquiescence in the delay.").