

# IN THE
# TENTH COURT OF APPEALS

No. 10-21-00074-CR

## IN RE ROBIN SEAN DAVIS

**Original Proceeding**

**From the 413th District Court**
**Johnson County, Texas**
**Cause No. F-50644**

## MEMORANDUM OPINION

Relator Robin Sean Davis brings this original proceeding seeking a writ of mandamus to compel the trial court to vacate its order of September 22, 2020 denying his motion to dismiss, to enter an order granting the motion to dismiss, and to dismiss the indictment against him with prejudice. In one issue, Davis argues that the trial court abused its discretion because he is being held in violation of the Interstate Agreement on Detainers Act (IADA).

*Background*

Davis, serving a nine-year sentence in Oklahoma, submitted a formal request on February 11, 2020 under the IADA seeking transfer to Texas to resolve pending charges of unlawful possession of a firearm, theft of a firearm, and theft of property. A bench warrant was signed on February 13, 2020, and Davis was released by Oklahoma to Texas and incarcerated in the Johnson County jail on February 25, 2020. Davis was arraigned on March 4, 2020 and counsel was appointed. At Davis's request, and the State's approval, the trial court set the case for trial on April 27, 2020.

On March 13, 2020, the Governor of the State of Texas declared a state of disaster in response to the immediate threat of a COVID-19 pandemic. The Governor of the State of Tex. Proclamation No. 41,3720, 45 Tex. Reg. 2087, 2094-95 (2020). In response to the Governor's declaration, the Texas Supreme Court, in conjunction with the Texas Court of Criminal Appeals, issued a series of emergency orders.

> The First Emergency Order issued on March 13, 2020, stated in part that—subject only to constitutional limitations—all Texas courts were authorized to "modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule or order, for a stated period ending no later than 30 days after the Governor's state of disaster has been lifted." *First Emergency Order Regarding the COVID-19 State of Disaster*, Misc. Docket No. 20-9042 (Tex. Mar. 13, 2020), Misc. Docket No. 20-007 (Tex. Crim. App. Mar. 13, 2020). This order also authorized certain individuals—"not including a juror"—to participate remotely in hearings, depositions, "or other proceeding[s] of any kind." *Id.* Less than a week later, a Third Emergency Order issued, stating that "[c]ourts must not conduct non-essential proceedings in person" that were "contrary to local, state, or national directives, whichever is most restrictive, regarding maximum group size." *Third Emergency Order Regarding the COVID-19 State of Disaster*, Misc. Docket No. 20-9044 (Tex. Mar. 19, 2020), Misc. Docket No. 20-008 (Tex. Crim. App. Mar. 19, 2020).

*Ex parte Pace*, No. 03-20-00430-CR, 2021 WL 728168, at *7 (Tex. App.—Austin Feb. 25, 2021, no pet.) (mem. op., not designated for publication). As a result of the emergency orders, trial did not commence on April 27.

> In April, the Texas Supreme Court issued a Twelfth Emergency Order containing the same authorization to Texas courts to "modify or suspend any and all deadlines and procedures" and amending the first order to clarify that Texas courts were authorized to "[a]llow or require anyone involved in any hearing, deposition, or other proceeding of any kind—including but not limited to a party, attorney, witness, court reporter, or grand juror, but not including a petit juror—to participate remotely, such as by teleconferencing, videoconferencing, or other means." *Twelfth Emergency Order Regarding the COVID-19 State of Disaster*, Misc. Docket No. 20-9059 (Tex. Apr. 27, 2020). But by May, the Texas Supreme Court issued its Seventeenth Emergency Order that, among other things, allowed for petit jurors "to participate remotely, such as by teleconferencing, videoconferencing, or other means." *Seventeenth Emergency Order Regarding the COVID-19 State of Disaster*, Misc. Docket No. 20-9071 (Tex. May 26, 2020). And as our sister court of appeals has noted, the Texas Supreme Court has specified various guidelines by which jury trials should be conducted. *See Ex parte Sheffield*, 611 S.W.3d 630, 635 (Tex. App.—Amarillo 2020, pet. filed).

*Id.* The Twelfth Emergency Order precluded in-person proceedings until June 1, 2020 and extended until July 15, 2020 any deadlines that would have expired between March 13, 2020 and June 1, 2020.

On June 30, 2020, Davis filed a petition for writ of habeas corpus with the trial court seeking dismissal of the indictment against him or the setting of a reasonable bail as the State did not bring him to trial within the timeframe set in the IADA. Davis's petition was denied by the trial court on July 16, 2020. Davis appealed the trial court's ruling, which was filed in this Court on July 30, 2020 under Cause Number 10-20-00203-

CR. Davis's appeal was transferred to the Seventh Court of Appeals pursuant to a transfer order.

While his appeal was pending in the Seventh Court of Appeals, Davis filed a Motion to Dismiss with Prejudice for Failure to Comply with Interstate Agreement on Detainers on August 24, 2020 in the trial court. Davis's motion asserted that he had not been provided a trial within 120 days as required by the IADA and that the indictment against him should be dismissed.[1] The trial court held an evidentiary hearing via video conference on September 22, 2020 and denied Davis's motion the same day.[2] The trial court specifically noted:

> The Court would note in Article 51.14, Article VI(a), of the Texas Code of Criminal Procedure, it provides as follows: (a) In determining the duration and expiration dates of the time period provided in Articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the Court having jurisdiction of the matter. The Texas Supreme Court has issued emergency orders during the COVID-19 pandemic in Texas which prohibits the Trial Court from trying jury trials. And the Court would find that the time periods as set out in the Interstate Agreement on Detainers has been tolled because of the emergency orders of the Texas Supreme Court.

---

[1] Davis's motion to dismiss alleges violations of the IADA; it does not raise a constitutional speedy trial violation. To the extent Davis's petition can be interpreted as raising such a constitutional claim, it was not properly briefed under Rule 38.1(i). TEX. R. APP. P. 38.1(i).

[2] The State argues that the trial court's order on Davis's motion to dismiss is a nullity because the trial court lacked jurisdiction once the clerk's record was filed with the Seventh Court of Appeals. *See* TEX. R. APP. P. 25.2(g). While an appeal of a pre-trial habeas action *may* entitle a defendant to a stay of further proceedings in the trial court, it does not deprive the trial court of jurisdiction. *See Trimboli v. MacLean*, 735 S.W.2d 953, 954 (Tex. App.—Fort Worth 1987, no pet.). An appeal from the denial of a pre-trial habeas petition is not an interlocutory appeal in the related criminal proceeding, but rather a separate and distinct proceeding. *See Greenwell v. Ct. of App. for Thirteenth Jud. Dist.*, 159 S.W.3d 645, 650 (Tex. Crim. App. 2005).

The Supreme Court's Twenty-Second Emergency Order was issued on August 6, 2020 and was in effect at the time Davis filed his motion to dismiss. *See Twenty-Second Emergency Ord. Regarding the COVID-19 State of Disaster*, 609 S.W.3d 129 (Tex. 2020). The Twenty-Second Emergency Order extended the suspension of deadlines until September 30, 2020, and precluded jury trials unless certain provisions were met, including:

> a.    be at the request of the judge presiding over the case;
>
> b.    ensure adequate social distancing and other restrictions and precautions are taken to ensure the health and safety of court staff, parties, attorneys, jurors, and the public;
>
> c.    take all reasonable steps to protect the parties' constitutional and statutory rights;
>
> d.    require the admonishment of petit jurors as appropriate to ensure that proper attention is given by each juror and that outside influence is removed; and
>
> e.    permit the Office of Court Administration to observe the processes used during the proceeding in order for the Office of Court Administration to prepare its report to the Court and to develop best practices for other courts' use.

*Id*. at 131

The Seventh Court of Appeals dismissed Davis's appeal on November 9, 2020, noting that a petition for writ of mandamus is the proper method for raising a claim regarding violation of the IADA rather than a petition for habeas corpus. *Ex parte Davis*, No. 07-20-00227-CR, 2020 WL 6576157 (Tex. App.—Amarillo Nov. 9, 2020, no pet.) (mem op., not designated for publication). Mandate was issued on January 26, 2021. Davis filed his present petition for writ of mandamus on March 20, 2021.

*Issue One*

AUTHORITY

Mandamus is an extraordinary remedy, available in a criminal case when the relator can establish: (1) he has no adequate remedy at law, and "(2) that what he seeks to compel is a ministerial act, not involving a discretionary or judicial decision." *In re Meza*, 611 S.W.3d 383, 388 (Tex. Crim. App. 2020) (orig. proceeding); *see also In re State ex rel. Ogg*, 618 S.W.3d 361, 363 (Tex. Crim. App. 2021) (orig. proceeding). We will assume without deciding that Davis has no adequate remedy at law.

> The ministerial act prong is satisfied if the record establishes "a clear right to the relief sought," which means that "the facts and circumstances dictate but one rational decision under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles."

*Meza*, 611 S.W.3d at 388 (footnoted citations omitted).

A trial court's denial of a pre-trial motion to dismiss is reviewed for an abuse of discretion. *See Williams v. State*, 464 S.W.2d 842, 844-45 (Tex. Crim. App. 1971); *Getts v. State*, 156 S.W.3d 593, 594 (Tex. App.—Tyler 2003), *aff'd*, 155 S.W.3d 153 (Tex. Crim. App. 2005). Any legal components of the trial court's decision are reviewed *de novo*. *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999); *see also Walker v. State*, 201 S.W.3d 841, 845 (Tex. App.—Waco 2006, pet. ref'd) ("We conduct a *de novo* review of the legal question of whether there has been compliance with the requirements of the IAD.").

The IADA is a congressionally sanctioned compact between participating states that enables a party state to obtain custody of an out-of-state prisoner for prosecution.

*Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017); *Davila v. State*, 623 S.W.3d 1, 7, (Tex. App.—Austin 2020, pet. ref'd). The IADA imposes duties that ensure a prisoner's quick return to the sending state. *Hopper*, 520 S.W.3d at 924.

> Texas has codified the IAD in the Code of Criminal Procedure. If a defendant is serving a term of imprisonment in another state and the State of Texas files a detainer in that other state, both the State of Texas and the defendant have a right to demand the transfer of the defendant to Texas for a final disposition of the Texas charge. If the defendant initiates a demand under the IAD, then the State of Texas must bring the defendant to trial within 180 days after the prosecuting officer and the appropriate court receive the defendant's demand. If the State of Texas initiates a demand under the IAD, then the State of Texas must bring the defendant to trial within 120 days of his arrival in Texas.

*Id.* at 924–25 (footnoted citations omitted); *see* TEX. CODE CRIM. PROC. ANN. art. 51.14. If a case is not brought to trial within the applicable time, the court where the indictment is pending "shall enter an order dismissing the same with prejudice." TEX. CODE CRIM. PROC. ANN. art. 51.14, art. IV(e). The time frames are, however, subject to a "reasonable continuance." *Lasker v. State*, 577 S.W.3d 583, 590 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd); *see* TEX. CODE CRIM. PROC. ANN. art. 51.14, art. III(a) ("for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.").

Article VI(a) of the IADA provides: "In determining the duration and expiration dates of the time periods provided in Articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." TEX. CODE CRIM. PROC. ANN. art. 51.14, art. VI(a).

DISCUSSION

Time under the IADA began to run on February 13, 2020 when Davis's request for a detainer was received by the State. Davis requested a jury trial on the charges against him. At the time of the hearing on Davis's motion to dismiss, the State announced that it was ready for trial. However, because of the Texas Supreme Court's emergency orders, trials were precluded through September 30 absent special circumstances. Therefore, 180 days had not passed on August 24 when Davis filed his motion to dismiss. The trial court did not abuse its discretion in determining that the time under the IADA was tolled at least until October 1, 2020. TEX. CODE CRIM. PROC. ANN. art. 51.14, art. III(a); art. VI(a).

Davis argues that the provisions of Article III(a) apply only to a party's physical or mental ability to stand trial, citing *Birdwell v. Skeen*, 983 F.2d 1332, 1340-41 (5th Cir. 1993). Article III(a) has never been analyzed by the United States Supreme Court, and numerous other jurisdictions have construed the article broadly to cover other circumstances that might render an individual unable to stand trial beyond "his literal incompetency." *See Lasker v. State*, 586 S.W.3d 408, 412 n.9 (Tex. Crim. App. 2019) (Yeary, J., dissenting) and cases cited therein. A broad reading of Article III(a) persuades us that the extraordinary circumstances occasioned by the COVID-19 pandemic and the measures taken to prevent its spread, created a unique situation that rendered Davis unable to stand trial.

At the hearing on Davis's motion to dismiss, the trial court additionally complied with the requirements of Article III(a) when it noted on the record, with Davis and

counsel present, that the continuance of Davis's trial was based upon good cause and that it was reasonable and necessary. TEX. CODE CRIM. PROC. ANN. art. 51.14, art. III(a).

Finally, there is nothing in the record to reflect that the trial court would have been able to conduct a jury trial in compliance with the Twenty-Second Emergency Order.

### *Conclusion*

We conclude that there was good cause for a continuance of the trial and that Davis failed to establish a clear right to mandamus relief. Accordingly, the petition for writ of mandamus filed on March 29, 2021 by Robin Sean Davis is denied.

MATT JOHNSON
Justice

Before Chief Justice Gray,
    Justice Johnson, and
    Justice Smith
Petition denied
Opinion delivered and filed May 18, 2022
Do not publish
[OT06]

