

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-24-00339-CR
_____

THE STATE OF TEXAS, APPELLANT

V.

JEFFREY SENIQUE MUNOZ, APPELLEE

On Appeal from the 264th District Court
Bell County, Texas
Trial Court No. FR79076, Honorable Paul L. LePak, Presiding

March 20, 2025

MEMORANDUM OPINION[1]

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

In July 2018, the State indicted Jeffrey Senique Munoz for injuring a child. Six years later, in August 2024, he moved to dismiss the prosecution. Allegedly, the intervening six-year period resulted in the denial of his right to a speedy trial. In the

---

[1] This case was transferred to this Court from the Third Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. In the event of any conflict, we apply the transferor court's case law. TEX. R. APP. P. 41.3.

alternative, he asked for a timely trial date. The trial court heard the motion and granted it. The State now appeals. We reverse.

### Background

Munoz was arrested in March 2018 and released on bond in May 2018. The State indicted him about two months later. Soon thereafter, his counsel filed with the district clerk various motions and requests. Among them was a July 25, 2018 letter requesting a speedy trial. Multiple trial settings ensued, as did orders continuing those settings. One of the reasons for the multiple continuances sought by both parties consisted of an unsuccessful effort to reach a plea bargain. The last continuance was granted in August 2019. Over the following five years, the case sat untried despite multiple settings, and Munoz uttered no further demand for a speedy trial.

Eventually, the matter came for pretrial hearing on May 9, 2024. The trial court entertained various motion and requests. One concerned a preferential trial setting. Munoz sought one but said nothing about being denied a speedy trial. Nor did he claim that any delay caused him prejudice. In response, the court set for trial on October 15, 2024, the "next date that we don't have trials already . . . ."

Despite securing the preferential October setting, Munoz moved the court, in August 2024, to either dismiss the cause or set it for trial. The trial court convened a hearing on the motion. That resulted in the trial court's "dismiss[ing] [the prosecution] with prejudice on 6th Amendment grounds" just weeks before the preferential setting.

2

*Analysis*

The State presents one issue. It argues that the trial court erred in finding a violation of the Sixth Amendment to the United States Constitution and dismissing the prosecution. We sustain the issue.

That amendment guarantees an accused the right to a speedy trial. U.S. CONST. amend VI; *State v. Lopez*, 631 S.W.3d 107, 113 (Tex. Crim. App. 2021). Through it, three interests of the defendant are intended to be preserved. They consist of 1) freedom from oppressive pretrial incarceration, 2) mitigation of the anxiety and concern accompanying public accusation, and 3) avoidance of impairment to the accused's defense. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008).

Determining if the right was denied an accused involves the balancing of various factors. Those include the 1) length of the delay, 2) reasons for the delay, 3) extent to which the accused asserted the right to a speedy trial, and 4) prejudice, if any, suffered by the defendant due to the delay. *See Hopper v. State*, 520 S.W.3d 915, 923-24 (Tex. Crim. App. 2017).

The length of delay implicates a double inquiry. *Id.* at 924. The court must consider whether it is sufficiently long to even trigger a further analysis, and, if so, then consider to what extent it stretches beyond this triggering length. *Id.* While assessing the reasons for delay, the court affords different weights to different reasons for the delay and asks who is more to blame, the government or defendant. *Id.* On the one hand, deliberate delay to hamper the defense is weighed heavily against the State while, on the other, more neutral reasons like negligence or overcrowded dockets weigh against it less heavily. *Id.* Delay caused by the accused weighs against the accused, and the latter has

3

a responsibility to assert the right to a speedy trial. *Id.* Though tardiness or neglect in invoking the right is not automatically fatal, it does render it difficult to prove the right was denied. *Id.*

As for prejudice, we assess it considering the interests mentioned earlier. *Id.* To reiterate, they are 1) preventing oppressive pretrial incarceration, 2) minimizing anxiety and concern of the accused, and 3) limiting the possibility of impairing the accused's defense. *Id.* However, proof of specific prejudice is not essential, for "'excessive delay'" presumptively may compromise the reliability of a trial in intangible and unknown ways. *Id.*

Finally, our review of the trial court's ruling on these matters is bifurcated. *State v. Krizan-Wilson*, 354 S.W.3d 808, 815 (Tex. Crim. App. 2011). We afford almost total deference to its findings of historical facts and reasonable inferences therefrom while considering de novo legal matters such as the application of the law to the facts. *Id.* With the foregoing in mind, we turn to the case at hand.

First, a delay approaching one year is sufficient to trigger continued analysis. *See, e.g., Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003) (citing *Doggett v. United States*, 505 U.S. 647, 651-52, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992)). Given that the prosecution at bar went untried for more than that period, we continue our analysis of the issue.

Next, Munoz requested a speedy trial by letter filed with the district clerk in July 2018. Then he engaged, with the State, in multiple continuances and plea bargaining. No other mention of the right to a speedy trial was made until he moved to dismiss in August 2024, or about six years later. Nor does anything of record reveal that the earlier

4

request was ever brought to the trial court's actual attention, though there is suggestion that the court coordinator may have known of it. Munoz also conceded, when asked by the court, that he did not remind the court of the earlier request "[w]hen the case ha[d] been scheduled for trial over these past five years." So too did he acknowledge that because the trial judge dealt "with so many cases . . . I probably should have reminded you of that . . . ." In short, little of record permits one to reasonably infer that Munoz actively pursued a speedy trial while remaining free on bail. And, his quietly acquiescing in this extended delay weighs against his Sixth Amendment complaint.

Third, some of the delay was due to the COVID-19 pandemic and the declaration of disaster. No one disputed the adverse effects of the pandemic on the trial court's docket here. Yet, "[t]o the extent that the pandemic and related court closures weigh against the State, they do so but slightly." *Laird v. State*, 691 S.W.3d 30, 40 (Tex. App.—Austin 2023, pet. ref'd); *see also Lemons v. State*, Nos. 10-21-00136-CR, 10-21-00137-CR, 10-21-00138-CR, 10-21-00139-CR, 10-21-00140-CR, 10-21-00141-CR, 2022 Tex. App. LEXIS 2781, at *11-12 (Tex. App.—Waco Apr. 27, 2022, no pet.) (mem. op., not designated for publication) (finding that delays were due to pandemic and that defendant failed to identify any prejudice he experienced).

We further note that Munoz did not attribute fault for the delay to the State. Rather, he not only acknowledged that "we are dealing more with priorities and crowded dockets" but also represented that the prosecutor "always said he's ready to go to trial." Also of note is the trial court's asking the litigants: "do we all agree that the vast fault, if you will, for the delay lies with the Court and neither the defense or the prosecution?" Though the State answered in the affirmative, Munoz took a more diplomatic route with "I'm going to

5

leave that call for the Court about deciding fault." In short, the trial court viewed the delay as attributable to the court's docket itself (due to the pandemic), not any particular litigant. And though such a delay still weighs against the State, we must remember that it does so in a lesser way. *Shaw v. State*, 117 S.W.3d 883, 889-90 (Tex. Crim. App. 2003) (stating that "a crowded court docket is not a valid reason for delay and must be counted against the State, although not heavily").

Next, and as alluded to earlier, Munoz remained free on bond the entire time his case pended. And, while he told the trial court he had to retire from the military at an earlier date, lost job opportunities, lost the ability to maintain jurisdiction over his children in Texas, and lost the opportunity for unsupervised contact with his children, no evidence was presented indicating that such arose *from a delay* in trying the cause. Instead, Munoz told the court that "as a result *of the allegation*" or "because *of the allegation*" his security clearance was frozen, and he retired early. (Emphasis added). As for employment opportunities, he conceded to being employed while trial pended. So too did he reveal his wife had moved from and resided outside Texas with the children for over six months. That alone could impede the ability to retain jurisdiction over the children in this State. And, regarding unsupervised visitation, the record suggests that one of Munoz' children may have been the victim of the injury underlying the indictment. If so, then any impediment to unsupervised visitation may well be for that reason, as opposed to delay. Yet, in any case, the nominal evidence Munoz proffered at the hearing does not illustrate the purported maladies he experienced were attributable to any delay in trial. Indeed, he did not even illustrate when those maladies occurred; he left both the trial court and this court to speculate about whether they occurred within the first months of or some

6

years after indictment.  So, we cannot say that delay caused him to suffer anxiety or physical or financial trauma.

Nor did Munoz cite to evidence suggesting that the delay impeded his ability to present a defense to the criminal accusation.  This may be because our own review of the pertinent reporter's record uncovered no effort to present such evidence.  Both we and the trial court were simply left to speculate on the matter, and speculation is not evidence.

Balancing the foregoing circumstances and factors de novo, *see Cantu*, 253 S.W.3d at 282 (identifying the balancing test as a legal question and holding that legal questions are reviewed de novo), we encounter little imposition upon the interests underlying the right to a speedy trial.  Munoz was not subjected to oppressive pretrial incarceration.  He may have suffered anxiety and malady while awaiting trial; yet, we know not if it stemmed from the mere allegation of criminal conduct or some delay given the limited record at hand.  Nor was evidence presented of any impairment to his ability to defend himself caused by the delay.  And, while excessive delay may be presumptively prejudicial, a six-year period does not ipso facto fall within that realm.  *See also Velasco v. State*, 678 S.W.3d 258, 264, 270 (Tex. App.—San Antonio 2023, no pet.) (finding no speedy trial violation despite a delay approximating six years); *Murphy v. State*, 280 S.W.3d 445, 453-56 (Tex. App.—Fort Worth 2009, pet. ref'd.) (finding no speedy trial violation despite a delay of over seven years); *Barringer v. State,* 399 S.W.3d 593, 601-03 (Tex. App.—Eastland 2013, no pet.) (finding no speedy trial violation despite an eight-year delay).

The balance we strike per *Cantu* and *Hopper* reveals no denial of the right to speedy trial based upon the de minimus record before us.  Thus, we sustain the State's issue, hold that the trial court erred, reverse the order of dismissal, and remand the cause.


Brian Quinn
Chief Justice


Do not publish.