

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-17-00568-CR

The **STATE** of Texas,
Appellant

v.

Martin **LOPEZ**,
Appellee

From the County Court at Law No. 7, Bexar County, Texas
Trial Court No. 549327
Honorable Genie Wright, Judge Presiding

### OPINION ON DENIAL OF REHEARING

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
    Rebeca C. Martinez, Justice
    Luz Elena D. Chapa, Justice

Delivered and Filed:  October 24, 2018

AFFIRMED

The State's motion for rehearing is denied. However, we withdraw our August 15, 2018 opinion and and judgment and substitute those issued today. The State appeals the trial court's order dismissing a misdemeanor assault charge against Martin Lopez on speedy trial grounds. As the parties acknowledge, the facts of this case are relatively uncommon in speedy trial cases. Lopez, who suffers from mental health disorders, was arrested for "putting his teeth [on his elderly mother's face] while trying to bite her." Lopez was placed in county jail, and he could not make

bail. The State took nearly three months to decide whether a felony or misdemeanor assault charge would be more appropriate, determining ultimately to file a misdemeanor charge. A visiting judge thereafter denied Lopez's request for bail and set trial for twelve days later. Despite Lopez's trial counsel raising the issue of his incompetence to stand trial at the pretrial hearing, Lopez was not evaluated. At trial, the State and Lopez's trial counsel expressed concerns about Lopez's competency. Based on the length of Lopez's pretrial incarceration and inevitable future delays for competency proceedings, Lopez requested that the trial court dismiss the case on speedy trial grounds. The trial court agreed and dismissed the misdemeanor assault charge. Considering the factors set out by the Supreme Court of the United States in *Barker v. Wingo*, 407 U.S. 514 (1972), we conclude the trial court did not err and, accordingly, affirm the trial court's order.

## BACKGROUND

On April 18, 2017, Lopez allegedly "put[] his teeth [on his elderly mother's face] while trying to bite her." Lopez was arrested that day, and he was unable to make bail. The State opened a felony case against Lopez, but Lopez was never indicted.

While Lopez was in jail, Lopez's appointed trial counsel received a July 2, 2017 notice under article 17.151. *See* TEX. CODE CRIM. PROC. ANN. art. 17.151, § 1 (West 2015). The notice stated Lopez had been in custody for seventy-five days awaiting an indictment. It further stated:

> Pursuant to Article 17.151 section 1 of the Texas Code of Criminal Procedure, a defendant who is detained in jail pending trial of accusation against them must be released either on personal bond or by reducing the amount of bail required, if the State is not ready for trial of the criminal action for which they are being detained within 90 days from the commencement of their detention if they are accused of a felony.

On July 12, 2017, five days before the ninety-day deadline, the State filed a misdemeanor assault charge against Lopez and sought to keep him incarcerated in county jail.

At the July 27, 2017 pretrial hearing before a visiting judge, Lopez raised the issue of his competency to stand trial and requested a personal recognizance bond. The visiting judge denied Lopez's request. Although the visiting judge ordered Lopez's mental competence to be evaluated over the weekend, no evaluation was conducted. The trial date was set for twelve days later on August 8, 2017.

On August 8, 2017, the trial court called the case and began by asking Lopez questions, with the permission of his trial counsel. Lopez testified he has mental issues, but had no present desire to harm himself or others. Lopez testified he wanted the case dismissed because he had been in jail for four months. Lopez's trial counsel orally moved for a speedy trial, requesting that the case be dismissed.

The State responded it had a right to notice on the speedy trial motion, and that it was ready to proceed to trial. However, the State raised "concerns about [Lopez]'s mental health and competency to proceed to trial, possibly." The trial court then stated:

> All right. This is what I'm going to put on the record. This man has no place to live. Because of a prior suicide watch, Haven for Hope will not take him. He has been in jail. There is some serious questions about whether or not anybody can proceed with this case. There are serious questions about whether his mother will even testify against him. She is currently in possession of a protective order -- which means you have to stay away from her. So I feel like the victim in this case has been protected, and she's quite involved in the case from what I've learned from the attorney, and she's quite vocal about what she wants to accomplish.

The State did not object to the trial court taking notice of these matters.

The proceeding went off the record, and Lopez's trial counsel filed a written Motion for Speedy Trial. Back on the record, the State again asserted its right to notice on the motion. The trial court overruled the State's objection, noting the case was set for trial on that date and that the State had announced ready to proceed. The trial court admitted into evidence the article 17.151

notice that, together with Lopez's testimony, showed Lopez had spent 112 consecutive days in county jail as of the August 8, 2017 trial date.

The trial court asked the State to explain the delay in the case up to that point. The following exchange occurred:

> [THE STATE]: Your Honor, I don't believe they found no assault took place. They dismissed it and refiled it as a misdemeanor because I think they believed it was a more appropriate charge than the felony.
>
> [TRIAL COUNSEL]: I believe, Your Honor, they could say an assault took place, but there was no bodily injury, which was required for the felony.
>
> [THE STATE]: There was bodily injury in the case.
>
> THE COURT: Well, here are our choices: The man has spent what would be the equivalent of almost a year in jail if you're giving him two for one. He is not competent. We can't try the case.
>
> [TRIAL COUNSEL]: Your Honor, even if we sent him for a competency hearing, that would be another month and he would be in jail for a full year.
>
> THE COURT: And he would come back as being incompetent to stand trial.
>
> [TRIAL COUNSEL]: Correct.
>
> THE COURT: So I'm going to grant your Motion for a Speedy Trial, and I'm going on the record saying, State, you're right. This is something that we need to take care of in court and the Court has no means to take care of it. We can't try him. It's just not right to leave him in jail, and we really don't have any timely services to offer him.

Lopez's trial counsel further stated that both he and the State agreed there was an issue as to Lopez's competency to stand trial or to enter a plea.

The trial court stated it had no choice but to grant Lopez's Motion for Speedy Trial and to dismiss the case. The trial court and trial counsel explained to Lopez he could not see or contact his mother because she had a protective order. They also explained to Lopez that he was expected to seek mental health counseling immediately. Before the end of the hearing, the State argued the trial court could not dismiss the case because article 46B.005 of the Texas Code of Criminal

Procedure required the court to order a competency evaluation. Apparently disagreeing with the State, the trial court signed an order granting Lopez's Motion for Speedy Trial and dismissing the misdemeanor assault charge. The State timely filed a notice of appeal.

### THE STATE'S SOLE ISSUE & ARGUMENTS ON APPEAL

The State presents a single issue on appeal, "Did the trial court err by failing to order a competency evaluation and, instead, dismissing the information against [Lopez] less than four months after he was arrested?" The State argues that once the trial court believed Lopez might be incompetent to enter a plea or stand trial, the trial court had no discretion but to refer Lopez for a competency evaluation. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.005(a) (West 2018). The State further argues the trial court lacked a basis to dismiss the case either under the Sixth Amendment or under Chapter 46B of the Texas Code of Criminal Procedure.

The State does not raise an issue or argue that the trial court erred by granting Lopez's Motion for Speedy Trial based on the State not being provided with sufficient notice. The State also does not raise an issue or argue that the trial court improperly took judicial notice of any of the facts that the trial court noted for the record. In its reply brief, the State argues we may not consider any matters at the pretrial hearing before the visiting judge because Lopez "has not supplemented this Court with a record to support [his] claims" about the hearing. We disagree for two reasons. First, on August 8, 2017, the parties agreed that certain matters were raised at the pretrial hearing before the visiting judge. Thus, the record before us reflects some of the matters raised at the pretrial hearing. Second, because this is a State's appeal, the State has the burden to present a sufficient record demonstrating its entitlement to the relief it seeks. *See State v. Weiss*, 8 S.W.3d 342, 344 (Tex. App.—Beaumont 1999, no pet.); *State v. Thomas*, 938 S.W.2d 540, 542 (Tex. App.—Dallas 1997, no pet.); *see also Newman v. State*, 331 S.W.3d 447, 450 (Tex. Crim. App. 2011) (explaining an appellant must "present a record demonstrating that the trial court's

decision should be overturned."). We therefore turn to address the State's sole issue in light of the record presented by the State.

### MANDATORY COMPETENCY EVALUATION UNDER CHAPTER 46B

The State argues the trial court erred under chapter 46B of the Texas Code of Criminal Procedure by not allowing the prosecution to proceed and ordering a competency evaluation. We review a trial court's implied decision not to order a competency evaluation for an abuse of discretion and consider the totality of the surrounding facts. *See Gray v. State*, 257 S.W.3d 825, 827 (Tex. App.—Texarkana 2008, pet. ref'd). Article 46B.005 of the Texas Code of Criminal Procedure provides, "If after an informal inquiry the court determines that evidence exists to support a finding of incompetency, the court shall order an examination . . . to determine whether the defendant is incompetent to stand trial in a criminal case." TEX. CRIM. PROC. CODE ANN. § 46B.005(a). Generally, article 46B.005(a)'s provision for ordering a competency examination imposes a mandatory duty on the trial court. *See id.*; TEX. GOV'T CODE ANN. § 311.016(2) (West 2013) ("'Shall' imposes a duty."). But we must consider the totality of the surrounding facts. *See Gray*, 257 S.W.3d at 827.

Here, Lopez argued his prosecution violated his constitutional right to a speedy trial. We may not construe chapter 46B, a state statute, in conflict with the constitution of the United States or of the State of Texas. *See* U.S. CONST. art. VI, cl. 2; *see also* TEX. GOV'T CODE ANN. § 311.021(1); *State v. Cortez*, 543 S.W.3d 198, 206 (Tex. Crim. App. 2018) ("We have a duty to narrowly construe statutes to avoid a constitutional violation."). We conclude a defendant must not be forced to undergo a competency evaluation in furtherance of his prosecution if his prosecution violates his constitutional rights. *See* TEX. GOV'T CODE ANN. § 311.021(1); *Cortez*, 543 S.W.3d at 206.

"If a violation of the speedy trial right is established, the only possible remedy is dismissal of the prosecution." *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003) (citing *Strunk v. United States*, 412 U.S. 434, 440 (1973)). Thus, whether the trial court erred under article 46B.005(a) by not ordering a competency evaluation turns on whether the trial court erred by granting Lopez's motion to dismiss based on his constitutional right to a speedy trial. If the trial court erred, and if a remand were necessary for further proceedings, we agree with the State that any further proceedings would require a competency evaluation. But we must determine, as an initial matter, whether the trial court erred by dismissing the misdemeanor assault charge on speedy trial grounds.

### RIGHT TO A SPEEDY TRIAL

The Sixth Amendment to the U.S. Constitution guarantees the accused in a criminal prosecution the right to a speedy trial. *Hopper v. State*, 520 S.W.3d 915, 923 (Tex. Crim. App. 2017) (citing U.S. CONST. amend. 6; *Vermont v. Brillon*, 556 U.S. 81, 89 (2009)); *see Klopfer v. North Carolina*, 386 U.S. 213, 222-23 (1967) (holding Sixth Amendment speedy trial right applies to states via the Fourteenth Amendment). The Texas Constitution similarly guarantees the accused a speedy trial in a criminal prosecution. TEX. CONST. art. 1, § 10. Although it is unclear whether Lopez asserted his right to a speedy trial under the U.S. Constitution, the Texas Constitution, or both, we apply the same test. *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992). When evaluating a speedy trial claim under *Barker v. Wingo*, courts generally must "consider the length of delay, the reasons for delay, to what extent the defendant has asserted his right, and any prejudice suffered by the defendant." *Hopper*, 520 S.W.3d at 923 (citing *Barker*, 407 U.S. at 530-32); *see Harris*, 827 S.W.2d at 956. "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. The conduct of

both the State and the defense must be weighed in balancing the *Barker* factors, and no single factor is an essential or sufficient condition to the finding of a speedy trial violation. *See id.* at 530, 533. "No one factor possesses 'talismanic qualities,' thus courts must 'engage in a difficult and sensitive balancing process' in each individual case." *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002) (quoting *Barker*, 407 U.S. at 533).

We apply a bifurcated standard of review. *Id.* "When reviewing the trial court's application of the *Barker* test, we give almost total deference to the trial court's historical findings of fact that the record supports, and we draw reasonable inferences from those facts necessary to support the trial court's findings." *Balderas v. State*, 517 S.W.3d 756, 767-68 (Tex. Crim. App. 2016). "An appellate court reviewing a trial court's ruling on a motion to dismiss for want of a speedy trial must do so in light of the arguments, information, and evidence that was available to the trial court at the time it ruled." *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003). However, we do not consider "evidence that was not before the trial court when it made its ruling." *Balderas*, 517 S.W.3d at 768.

"Review of the individual *Barker* factors necessarily involves fact determinations and legal conclusions, but the balancing test as a whole is a purely legal question that we review *de novo*." *Id.* (citing *Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997)). Because Lopez prevailed on his speedy trial claim, "we presume the trial court resolved any disputed fact issues in [his] favor." *State v. Ritter*, 531 S.W.3d 366, 371 (Tex. App.—Texarkana 2017, no pet.) (citing *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999)). When, as here, the State did not request, and the trial court did not make, findings of fact and conclusions of law, we will imply all findings necessary to support the trial court's ruling if those findings are supported by the record. *Id.*

**A. The Length of the Delay**

The first factor we must consider is the length of the delay. *Barker*, 407 U.S. at 530; *Hopper*, 520 S.W.3d at 924; *Wisser v. State*, 350 S.W.3d 161, 165 (Tex. App.—San Antonio 2011, no pet.). This first factor involves "a double inquiry: A court must consider whether the delay is sufficiently long to even trigger a further analysis under the *Barker* factors, and if it is, then the court must consider to what extent it stretches beyond this triggering length." *Hopper*, 520 S.W.3d at 924 (citing *Doggett v. United States*, 505 U.S. 647, 651-52 (1992)). The length of delay is measured from the time the defendant is arrested or formally accused, whichever is first. *Dragoo*, 96 S.W.3d at 313 (citing *United States v. Marion*, 404 U.S. 307, 313 (1971)).

*1. Whether the length of the delay was presumptively prejudicial*

"[C]ourts have usually tried to settle upon some time period after which . . . it makes sense to inquire further into why the defendant has not been tried more promptly." 5 WAYNE R. LAFAVE, ET AL., CRIMINAL PROCEDURE, § 18.2(b), p. 130 (4th ed. 2015). The Court of Criminal Appeals has noted that other courts generally hold a delay of eight months to a year, or longer, is presumptively prejudicial and triggers a speedy trial analysis. *See, e.g.*, *Shaw*, 117 S.W.3d at 889; *Harris*, 827 S.W.2d at 956. And, in felony sexual assault cases and cases in which defendants are released on bond, the Court of Criminal Appeals has recognized that a delay of four months is not sufficient while a seventeen-month delay is. *Phillips v. State*, 650 S.W.2d 396, 399 (Tex. Crim. App. [Panel Op.] 1983) (holding delay of seventeen months in prosecution for rape was presumptively prejudicial); *Pete v. State*, 501 S.W.2d 683, 687 (Tex. Crim. App. 1973) (holding no presumptive prejudice when defendant, charged with rape and incarcerated on burglary conviction, was tried four months after indictment). However, "there are some cases which do not fit this mold." LAFAVE, *supra*, at § 18.2(b), p. 130.

There is "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months." *Barker*, 407 U.S. at 523. And "[t]here is no set time element that triggers the analysis." *Cantu v. State*, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008). "*Barker*'s formulation necessarily compels courts to approach speedy trial cases on an *ad hoc* basis." *Brillon*, 556 U.S. at 91 (internal quotation omitted). The right to a speedy trial is necessarily relative, and whether the length of a delay is presumptively prejudicial and triggers an inquiry into the other *Barker* factors "is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 522, 530-31.

In this context, "prejudice" or "prejudicial" refers to (1) oppressive pretrial incarceration; (2) anxiety or concern related to the pending criminal charges; and (3) impairment of the accused's defense. *Shaw*, 117 S.W.3d at 890 (citing *Barker*, 407 U.S. at 532). Circumstances of a case that can affect whether the delay is presumptively prejudicial therefore may include the nature of the charged offense, and whether the defendant can make bail or must await trial while confined in jail. *See Barker*, 407 U.S. at 520 (noting, "If an accused cannot make bail, he is generally confined . . . in a local jail."). "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* at 531. The State is entitled to a reasonable period to prepare its case. *Cf. Shaw*, 117 S.W.3d at 889-90 (noting, in aggravated sexual assault case, a three-month period between indictment and trial was a reasonable time for State to prepare its case). But "unreasonable delay in run-of-the-mill criminal cases cannot be justified by simply asserting that the public resources provided by the States' criminal justice system are limited and that each case must await its turn." *Barker*, 407 U.S. at 538 (White, J., concurring).

The State cites an unpublished case from the El Paso court of appeals involving a four-month delay. *State v. Wester*, No. 08-16-00105-CR, 2017 WL 4277584 (Tex. App.—El Paso Sept.

27, 2017, no pet.) (mem. op., not designated for publication). The court of appeals noted courts must consider the "substance of the case" and the seriousness and complexity of the offense. *Id.* at *3. Wester, the defendant, was released on bond the day after he was arrested, but he was subsequently arrested on new, federal charges. *Id.* at *1. The court of appeals, relying on felony sexual assault cases, held a four-month delay did not trigger a full *Barker* analysis when the defendant was charged with first-degree-felony drug possession. *Id.* at *1, 3.

The State also cites *State v. Owens*, which involved a seven-month delay. 778 S.W.2d 135, 136 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd). In *Owens*, the delay was 223 days from the date of the defendant's arrest to the date of his indictment for two counts of burglary of a habitation. *Id.* Notably, the defendant was incarcerated in county jail during that time. *Id.* Two days after the indictment, the defendant filed an application for writ of habeas corpus, raised his right to a speedy trial, and requested dismissal of the charges. *Id.* The trial court granted the defendant relief, and in considering the State's appeal, the court of appeals affirmed. *Id.* Addressing *Barker*'s length-of-delay factor, the court of appeals relied on *Barker*, noting, "A delay that can be tolerated for an 'ordinary street crime' is considerably less than the time for a serious, complex conspiracy charge." *Id.* at 137 (citing *Barker*, 407 U.S. at 530). The court then held burglary of a habitation is an "ordinary street crime," and proceeded to analyze the remaining *Barker* factors. *Id.* at 137-38. Although the State asks us not to follow *Owens* for several reasons, those reasons do not relate to the *Owens* court's emphasis on *Barker*'s principle that we must consider the nature and complexity of the offense.

At least one court has held that under *Barker*, a three-and-half-month delay can trigger an analysis of the remaining *Barker* factors, depending upon the specific facts of the case. *State v. Reaves*, 376 So. 2d 136, 138 (La. 1979) (noting the court "assiduously follow[s] the *Barker v. Wingo* analysis in evaluating Louisiana speedy trial claims"). In *Reaves*, the defendant was arrested

- 11 -

and charged with misdemeanor possession of marijuana, and he was released on bail. *Id.* at 137. The court reset the trial multiple times over the course of several months because the State was unable to secure its witnesses' attendance. *Id.* The court explained that although the case had been pending for only three and a half months:

> the mere length of the delay does not determine the speedy trial issue. Since this case involves a simple misdemeanor offense, possession of a single marijuana cigarette, the constitution tolerates relatively brief delays. Accordingly, we must examine the peculiar circumstances of the case to find if the length of the delay and the closely related factor, the reason for the delay, provoke a speedy trial inquiry.

*Id.* at 138 (internal citations omitted). The *Reaves* court proceeded to analyze the remaining *Barker* factors and affirmed the trial court's dismissal of the defendant's misdemeanor drug possession charge on speedy trial grounds. *Id.* at 138-39.

The State argues *Wester* is good law, *Owens* is bad law, and that we should follow the former. But *Wester* and *Owens*, as well as *Reaves*, read in light of *Barker*'s principles, as reiterated by the Court of Criminal Appeals, can be reconciled based on their different facts. Under *Barker*, we may not quantify the exact length of the time that will, in all cases, trigger or not trigger an analysis of the remaining *Barker* factors. *Barker*, 407 U.S. at 523; *Cantu*, 253 S.W.3d at 281. The above-discussed authorities are all consistent with the principle that we must consider the delay in light of the substance, seriousness, and complexity of the offense, as well as whether the defendant has been incarcerated in jail awaiting trial. *See Wester*, 2017 WL 4277584, at *1-3; *Owens*, 778 S.W.2d at 136-38; *Reaves*, 376 So. 2d at 138-39; *see also Doggett*, 505 U.S. at 652 n.1 (noting whether a specific delay is presumptively prejudicial "depend[s] on the nature of the charges," and citing LAFAVE, *supra*, § 18.2); *Barker*, 407 U.S. at 531 (noting delay should be viewed in light of seriousness and complexity of the charges).

With these principles in mind, we turn to the facts of this case. As of the August 8, 2017 trial date, Lopez had been accused by virtue of his arrest for 112 consecutive days. *See Dragoo*,

96 S.W.3d at 313 (providing delay measured from time of arrest). Although the State announced at the August 8, 2017 hearing it was ready to proceed to trial, the parties agreed there was uncertainty as to whether Lopez was competent to stand trial. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a) (providing an incompetent defendant may not be tried). Had Lopez not asserted his constitutional right to a speedy trial, the trial court would have had no discretion but to delay trial and order a competency evaluation. *See id.* art. 46.005(a). The trial court, as a factfinder, was entitled to infer there necessarily would be additional delays before the case could proceed to trial on Lopez's guilt. Thus, the record supports an implied finding that the delay did not consist of only 112 days, but necessarily longer because not dismissing the charge would have required an evaluation of Lopez's competency to stand trial and possibly subsequent competency proceedings before the trial court could have proceeded with a trial on the misdemeanor assault charge. *See id.* arts. 46B.004(d), 46B.005(a), (b).

It is undisputed Lopez was incarcerated for 112 days because he could not make bail. The trial court considered the time Lopez had been incarcerated, as well as the likelihood of additional delays due to the question of Lopez's competency, in light of the nature of the charged offense and the maximum punishment available. Lopez was charged with a Class A misdemeanor, the maximum punishment for which is a $4,000 fine and confinement in jail for a term not to exceed one year. *See* TEX. PENAL CODE ANN. §§ 12.21, 22.01(a)(3), (c)(1) (West 2011 & Supp. 2018). Ordinarily, a defendant who is detained in jail pending trial of an accusation against him must be released on personal bond if the state is not ready for trial within "30 days from the commencement of his detention if he is accused of a misdemeanor punishable by a sentence of imprisonment in jail for more than 180 days." TEX. CODE CRIM. PROC. ANN. art. 17.151, § 1(2). As the trial court noted, Lopez had "spent what would be the equivalent of almost a year in jail if you're giving him two for one." The trial court was also presented with the prospect that Lopez would be determined

- 13 -

incompetent to stand trial and further confined. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.0095(a) (West 2018) (providing a defendant incompetent to stand trial may be institutionalized for a period of time up to "the maximum term provided by law for the offense").

Furthermore, the facts alleged in support of the information and complaint were that Lopez "put[] his teeth [on his elderly mother's face] while trying to bite her" "when [he] knew and should reasonably have believed that [she] would regard the contact as offensive and provocative." Unlike the cases upon which the State primarily relies, this case does not involve a complex factual scenario, a felony offense, or a defendant who has been released on bail pending trial. This case, like *Reaves*, involves a defendant charged with a relatively straightforward misdemeanor offense. *See* 376 So. 2d at 138. The facts here present a stronger case than *Reaves* for concluding the delay was presumptively prejudicial because the *Reaves* defendant was released on bail and his claim to prejudice was missing six days of work to be present for multiple trial settings. *Id.* at 139. Lopez, on the other hand, could not make bail and had spent 112 days incarcerated on a misdemeanor offense.

Consistent with *Barker* and our sister courts, we consider the length of delay and the amount of time Lopez spent in the county jail in light of the substance, seriousness, and complexity of the offense. After all, a primary purpose of the right to a speedy trial is to prevent undue and oppressive pretrial incarceration. *Marion*, 404 U.S. at 320. "The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time." *Barker*, 407 U.S. at 532-33. We conclude that, based on the specific facts presented by this case, the delay in this case was presumptively prejudicial and sufficient to trigger an analysis of the remaining *Barker* factors.

*2.    The extent to which the delay stretches beyond the triggering length.*

The second inquiry under the length-of-delay factor is the length of the total delay, including the delay beyond the triggering length. *See Hopper*, 520 S.W.3d at 924. As of August 8, 2017, Lopez had been incarcerated for 112 days on a misdemeanor offense. As we previously noted, the trial court was entitled to infer additional delays would be necessary if the trial court denied Lopez's Motion for Speedy Trial. Lopez's trial counsel argued the delay for a competency hearing would be approximately one month and Lopez could be confined for up to a year; the State did not disagree or argue otherwise. *See Shaw*, 117 S.W.3d at 889 (requiring us to consider the arguments and information available to the trial court). Considering the 112-day length of Lopez's pretrial incarceration, the simplicity of the offense, the maximum sentence for the charged offense, a reasonable time for the State to prepare this case, and an additional delay would be necessitated by the unresolved question of Lopez's competency to stand trial, we conclude the length of the delay in this case weighs slightly against the State.

**B. The Reasons for Delay**

The next factor we must consider is the reasons for the delay. *See Hopper*, 520 S.W.3d at 924. "The burden of justifying the delay is on the State." *Voda v. State*, 545 S.W.3d 734, 742 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Cantu*, 253 S.W.3d at 280). "In evaluating the State's reason for the delay, we assign different weights for different reasons. Valid reasons for delay do not weigh against the State, whereas bad-faith delays weigh heavily against the State." *Id.* (internal citations omitted). "A more neutral reason, such as negligence, will weigh less heavily against the State." *Id.* "In the absence of an assigned reason for the delay by the State, we may presume neither a deliberate attempt to prejudice the defense nor a valid reason for the delay." *Id.* (citing *Dragoo*, 96 S.W.3d at 314).

The record shows there are two[1] delays in this case we must consider. The first delay—the 112-day period from Lopez's arrest to the August 8, 2017 trial date—was caused primarily by the State's decision to pursue a felony assault charge initially, and then to refile the case against Lopez as a misdemeanor. The parties disputed in the trial court whether there was any evidence showing Lopez's mother suffered a bodily injury that would support charging a felony. The State explained the State refiled the case as a misdemeanor because the State likely "believed it was a more appropriate charge than the felony." The trial court was not bound to accept the State's explanation. And the trial court was entitled to infer the State should have filed the misdemeanor charge from the outset either because the misdemeanor charge was more appropriate or because the State had no evidence to prosecute the case as a felony. Based on the reason the State assigned for the delay, the trial court could have impliedly found the State was at least negligent by initially filing the case as a felony when the case should or must have been filed as a misdemeanor from the outset.

In its motion for rehearing, the State argues the trial court was not entitled to rely on the representations of the State's counsel unless "counsel's representations are based on matters which trial counsel has first-hand knowledge." First, the record does not establish that the State's counsel lacked first-hand knowledge about the reason for the delay in this case. *Cf. Gonzales v. State*, 435 S.W.3d 801, 811 (Tex. Crim. App. 2014) (rejecting appellant's reliance on State's argument when

---

[1] We note the record supports a possible third delay if Lopez were determined competent to stand trial. The trial court recited for the record, with no objection from the State, facts suggesting Lopez's mother was not willing to testify against Lopez and was simply using the criminal prosecution to keep Lopez in jail. The State did not complain on appeal that the trial court improperly took judicial notice of these matters until its motion for rehearing on appeal. *See* TEX. R. APP. 38.1(i); *Riles v. State*, 452 S.W.3d 333, 336 (Tex. Crim. App. 2015) (affirming court of appeals that held "new issues may not be raised through a motion for rehearing"); *see also Lighteard v. State*, No. 04-09-00021-CR, 2010 WL 1997723, at *2 (Tex. App.—San Antonio May 19, 2010, no pet.) (mem. op., not designated for publication) ("A trial court may take judicial notice when requested by a party or sua sponte."). Thus, even if Lopez were determined to be competent, the trial court clearly questioned whether there would ever be a trial in this case. The trial court noted Lopez's mother had been "very vocal" about her intent, which suggests the State likely knew about Lopez's mother's intent in pressing charges against Lopez. These facts could support an inference that the State's delay was in bad faith, in which case this delay would weigh heavily against the State. *See Cantu*, 253 S.W.3d at 280-81.

it was "clear that the prosecutor had no personal knowledge of the . . . issue"). Second, the State's argument attempts to improperly shift the burden to Lopez to explain the State's reason for the delay; if the State is now suggesting that it had no reason for the delay, then this factor would weigh more heavily against the State. *See Voda*, 545 S.W.3d at 742 ("The burden of justifying the delay is on the State."). Third, even without what the State is now suggesting was a misrepresentation to the trial court about the State's reason for delay, it was undisputed that the State did not pursue a felony charge after Lopez had been incarcerated nearly three months, the State filed a misdemeanor charge of a lesser-included-offense based on the same incident, and it continued to keep Lopez incarcerated. The trial court was entitled to make reasonable inferences from the State's conduct. Thus, the reason for the first delay of 112 days weighs against the State. *See Hooper*, 520 S.W.3d at 924.

The second delay we must consider is the future delay necessitated by the unresolved question as to Lopez's competency to stand trial. "Courts have recognized several other situations which fall within the 'valid reason' category, such as incompetency of the defendant." LAFAVE, *supra*, § 18.2(c), at 136 (citing *United States v. Geelan*, 520 F.2d 585 (9th Cir. 1975); *U. S. ex rel. Little v. Twomey*, 477 F.2d 767 (7th Cir. 1973)); *see Hull v. State*, 699 S.W.2d 220, 222 (Tex. Crim. App. 1985) ("[T]he eight month delay due to appellant's incompetency to stand trial does not infringe on his right to speedy trial.") (citing *Grayless v. State*, 567 S.W.2d 216 (Tex. Crim. App. [Panel Op.] 1978)). However, holding a defendant longer than reasonably necessary, as determined by the "gravity of the offense," presents different circumstances. *Little*, 477 F.2d at 770 (citing *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). Moreover, the State has a duty to promptly try a defendant and "may not justify a delay merely by citing the defendant's incompetence." *Geelan*, 520 F.2d at 588.

On August 8, 2017, the parties informed the trial court that the issue of Lopez's competence had been raised and discussed at the pretrial hearing before the visiting judge. The trial court was informed the visiting judge had ordered Lopez to be evaluated, but Lopez was not evaluated. The trial court could have reasonably inferred from the parties' representations that the visiting judge had a serious question as to Lopez's competence to stand trial. However, the record does not reflect why the competency evaluation did not occur. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.021 (providing the process for ordering a competency evaluation). We therefore cannot say the record supports an inference that the State was necessarily responsible for the inevitable future delay. *See Voda*, 545 S.W.3d at 742; *Dragoo*, 96 S.W.3d at 314. Overall, we conclude the second factor, the reasons for the delays, weighs slightly against the State.

## C. Assertion of the Right

We next consider the extent that Lopez asserted his right to a speedy trial. *Barker*, 407 U.S. at 530; *Hopper*, 520 S.W.3d at 924; *Wisser*, 350 S.W.3d at 165. Lopez had the burden as to this factor. *Cantu*, 253 S.W.3d at 280. Generally, the assertion-of-the-right factor concerns whether a defendant asserted his right to a speedy trial in the trial court as opposed to the first time on appeal. *See Dragoo*, 96 S.W.3d at 314; *Phillips*, 650 S.W.2d at 400-01 (citing *Barker*, 407 U.S. at 531-532). "Of course, the defendant has no duty to bring himself to trial; that is the State's duty." *Zamorano*, 84 S.W.3d at 651. "This does not mean that the defendant has *no* responsibility to assert his right to a speedy trial." *Id.* "[T]he defendant's assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id.*

"Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Cantu*, 253 S.W.3d at 283. "If a defendant fails to first seek a speedy trial before seeking dismissal of the charges, he should

provide cogent reasons for this failure. Repeated requests for a speedy trial weigh heavily in favor of the defendant, while the failure to make such requests supports an inference that the defendant does not really want a trial, he wants only a dismissal." *Id.*

"This is not to say, however, that asking only for dismissal will result in a 'waiver,' while seeking a speedy trial and, in the alternative, a dismissal, would preserve the claim." *Phillips*, 650 S.W.2d at 401. "In some cases, defense counsel may legitimately feel that a long delay has caused a client so much prejudice that dismissal is warranted, even if the State is belatedly ready to move promptly." *Id.* "Each case must turn on its own facts, and the particular relief a defendant seeks is but one fact to consider." *Id.* We also consider whether there is anything "to suggest that appellant deliberately failed to move for a speedy trial because of tactical reasons." *See id.* (citing *Barker*, 407 U.S. at 534-36); *accord Cantu*, 253 S.W.3d at 283.

The State argues Lopez "did not assert his right to a speedy trial; instead, he asked for the case to be dismissed." Because dismissal is the only possible remedy for a violation of the right to a speedy trial, the assertion of the right to a speedy trial and a request for a dismissal are not mutually exclusive. *See Dragoo*, 96 S.W.3d at 313. The record establishes Lopez asserted his right to a speedy trial in the trial court on August 8, 2017, first by orally asserting his right and then by filing a written Motion for Speedy Trial. Lopez's assertion of his speedy trial right in the trial court "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *See Zamorano*, 84 S.W.3d at 651.

Lopez first asserted his right to a speedy trial by requesting a dismissal on the date of trial. Although such an assertion of his speedy trial right ordinarily weakens a speedy trial claim, the record supports an implied finding of historical fact that trial counsel legitimately felt the delay had caused so much prejudice that dismissal is warranted, even though the State announced ready to proceed to trial. *See Phillips*, 650 S.W.2d at 401. Lopez was incarcerated on or about April 17,

2017; he was charged with misdemeanor assault on July 11, 2017, and Lopez remained in jail; at the pretrial hearing, the issue of Lopez's competency was raised before a visiting judge, but no competency evaluation was conducted; the trial date was set for August 18, 2017; and Lopez first raised his right to a speedy trial on August 18, 2017. The record supports an implied finding of historical fact that Lopez did not deliberately fail to request a speedy trial for tactical reasons.

The State argues a dismissal for denial of a right to a speedy trial is premature when the defendant fails to exhaust less drastic remedies, such as a pretrial writ of habeas corpus or a motion to reduce his bond under article 17.151. *See* TEX. CODE CRIM. PROC. ANN. art. 17.151. We agree that we must consider whether a defendant who is granted bail ever attempts to secure his release on bail. *Grayless*, 567 S.W.2d at 222. The record in this case shows Lopez was initially unable to make bail while the case was filed as a felony case. And after the State filed the misdemeanor case, at the pretrial hearing before the visiting judge, Lopez pursued less drastic relief of being released from jail on a personal recognizance bond and having his competency evaluated before the trial date. The trial court denied the request for release, but then set the trial for only twelve days later. Under these circumstances, we cannot say Lopez's decision not to pursue habeas relief for a violation of article 17.151 significantly undermines his assertion of his right to a speedy trial. Considering Lopez's assertion of his right to a speedy trial in the trial court, we conclude this factor weighs slightly against the State.

**D. Prejudice**

We next consider prejudice. *Barker*, 407 U.S. at 530; *Hopper*, 520 S.W.3d at 924; *Wisser*, 350 S.W.3d at 165. We assess this factor "in light of the interests the right to a speedy trial was designed to protect: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired." *Hopper*, 520 S.W.3d at 924. "Affirmative proof of particularized prejudice is not essential to every speedy

trial claim because excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify . . . and its importance increases with the length of delay." *Id.* (internal quotation marks omitted). "Extensive pretrial incarceration as a result of the pending charges, of course, clearly shows prejudice." GEORGE E. DIX & JOHN M. SCHMOLESKY, TEXAS PRACTICE SERIES: CRIMINAL PRACTICE AND PROCEDURE § 28.18, at 685 (3d. ed. 2011).

Lopez was incarcerated for a total of 112 days before trial on a misdemeanor charge for which the maximum sentence included jail time of up to 365 days. The trial court considered the total time Lopez spent in jail as it relates to the maximum sentence he could have received for the offense. As the State acknowledges, any time spent in county jail is unpleasant, to say the least. *See Barker*, 407 U.S. at 532-33 ("The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time."). Lopez also testified he suffered from mental health issues; specifically, that he was with diagnosed anxiety, depression, and bipolar disorder. *Edwards v. State*, 867 S.W.2d 90, 96 (Tex. App.—Corpus Christi 1993, no pet.) (considering the state of the defendant's mental health). The State and Lopez's trial counsel also raised concerns about Lopez's competence to stand trial, suggesting Lopez lacked a rational understanding of the proceedings or the present ability to communicate with his counsel. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a). Thus, the record supports an implied finding of historical fact that Lopez's pretrial incarceration was particularly oppressive considering the nature and seriousness of the offense. *See Hopper*, 520 S.W.3d at 924. But because there is no evidence of the other prejudice components, particularly the most serious component of impairment of the defense, we conclude this factor weighs only slightly against the State. *See Barker*, 407 U.S. at 532.

**E. Balancing the Factors**

We agree with the State's characterization of this appeal, "This is a hard case." The facts of this case are uncommon for speedy trial cases, and most of the *Barker* factors weigh only slightly against the State. As we have explained, the State took nearly three months to determine, from the very simple facts of this case, whether it would be more appropriate to charge Lopez with felony assault or misdemeanor assault. During those three months, Lopez—who suffers from anxiety, depression, and bipolar disorder and who might ultimately be incompetent to stand trial— languished in the county jail, unable to make bail, without being tried. After the State determined it would be "more appropriate" to charge Lopez with misdemeanor assault, the State sought to keep Lopez in the county jail. A visiting judge then denied Lopez's request to be released from jail. Although the visiting judge ordered a competency evaluation, Lopez was never evaluated before trial. As a result, Lopez was in jail for a total of 112 days on a misdemeanor charge for which the maximum punishment is confinement for 365 days. On August 8, 2017, proceeding to trial was not an option, despite the State's ready announcement. But for Lopez's Motion for Speedy Trial, the trial court's only option was to further delay this case for competency proceedings. Having engaged in the "difficult and sensitive" process of balancing the *Barker* factors, we conclude the factors sufficiently weigh against the State and in favor of upholding the trial court's implied determination that the delay violated Lopez's right to a speedy trial. *See Zamorano*, 84 S.W.3d at 648 (citing *Barker*, 407 U.S. at 533).

## CONCLUSION

The record supports the trial court's implied determination that the delay in this case violated—or that continuing the proceedings would violate—Lopez's constitutional right to a speedy trial. We cannot construe chapter 46B of the Texas Code of Criminal Procedure, a state statute mandating a competency evaluation under some circumstances, as requiring Lopez's

continued prosecution in violation of his constitutional rights. We therefore hold the trial court did not err "by failing to order a competency evaluation and, instead, dismissing the information against [Lopez] less than four months after he was arrested." Accordingly, the trial court's order is affirmed.

Luz Elena D. Chapa, Justice

PUBLISH