

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-1291-18

---

### THE STATE OF TEXAS, Appellant

### v.

### MARTIN RIVERA LOPEZ

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### BEXAR COUNTY

---

RICHARDSON, J. delivered the opinion of the Court, in which KELLER, P.J., and HERVEY, NEWELL, WALKER, SLAUGHTER, and MCCLURE, JJ., joined. YEARY and KEEL, JJ., concurred in the result.

### OPINION

Can a four-month delay be enough to violate a defendant's right to a speedy trial in a misdemeanor case? We hold that in this case it cannot. Appellee Martin Rivera Lopez spent 112 days in jail on a felony charge pursuant to Texas Penal Code Section 22.04(a) that was reduced after 85 days to a Class A misdemeanor pursuant to Texas Penal Code

Sections 22.01(a)(3) and 22.01(c)(1). After the trial court granted Appellee's motion for speedy trial and dismissed the case, the State appealed. The court of appeals considered the four factors articulated by the Supreme Court in *Barker v. Wingo* – length of delay, reasons for delay, defendant's assertion of the right, and prejudice to the defendant – and upheld the trial court's dismissal. *See Barker v. Wingo*, 407 U.S. 514, 530-32 (1972); *State v. Lopez*, 563 S.W.3d 409 (Tex. App. – San Antonio 2018, pet. granted). But a complete review of the brief hearings that took place at the trial court suggests the following: (1) that counsel for Appellee requested an improper remedy – asking for a speedy trial while simultaneously acknowledging Appellee's incompetence and asking for a dismissal 112 days after his arrest (both at the bench and in the speedy trial motion he filed), and (2) that the second visiting trial judge exceeded her authority by granting that motion and then dismissing the case. It is clear that during the "non-evidentiary" hearing on August 8, 2017,[1] state statutes and precedent were not followed, and some of the factual and legal assertions were inaccurate. Accordingly, based on our independent review of the record and the unique circumstances in this case, we reverse.

## BACKGROUND

Appellee was arrested on April 18 pursuant to a felony complaint for the offense of causing bodily injury to an elderly person. *See* TEX. PENAL CODE § 22.04(a). Trial counsel was appointed on May 12, and following pre-indictment hearings on June 21 and July 7 in the 144th District Court, counsel received a 75-day notice pursuant to Article 17.151 of the Texas Code of Criminal Procedure on July 2. The notice stated that Appellee had been in

---

[1] All dates herein refer to 2017.

custody for 75 days awaiting indictment, and he was entitled to a personal recognizance bond or reduced bail if the State was not ready for trial within 90 days. On July 12, five days before the 90-day deadline, the State, using its prosecutorial discretion, dismissed the felony charge and filed an information for a Class A misdemeanor assault against Appellee for the offense of intentionally or knowingly causing offensive or provocative physical contact to Maria Lopez, an elderly person. *See* TEX. PENAL CODE §§ 22.01(a)(3) & 22.01(c)(1).

Two county court hearings took place – one on July 20 and one on August 8. Until the August 8 hearing, there is nothing in the record that reflects Appellee requested or filed a speedy trial motion at any time. In fact, his speedy trial motion was filed after the hearing took place on August 8. Appellee's claims that the State had no case, there was no injury, and the victim might not cooperate were based on unsworn and unsupported comments made by counsel for Appellee because there was never an evidentiary hearing during any of the prior hearings.

On July 20, 2017 (not July 27, as noted in the court of appeals' opinion), Appellee appeared in front of the first visiting judge in County Court #7 to answer to the newly filed misdemeanor charge. There is no record of that hearing other than the court's docket sheet found in the Clerk's file, but the hearing is mentioned by both the State and Appellee at the conclusion of the August 8 hearing and in Appellee's Brief before this Court. In Appellee's Brief, he claims that (1) the first visiting trial judge violated Appellee's rights by not following Article 17.151 and not immediately releasing him once the case was reduced to a misdemeanor; and (2) Appellee's counsel had no notice of a trial setting on August 8. Specifically, Appellee claims the following:

Finally on August 8, 2017, Appellee's trial counsel was notified that his client was available in the Court without any prior notice of any type of hearing. When Trial Counsel entered the Courtroom and approached the coordinator, the State of Texas approached the bench and announced ready for trial. Neither the Appellee nor his Trial Counsel had any notice of a Trial Setting on that date and such notice cannot be shown anywhere in the record. Counsel is not attempting to raise any conspiracy that the State/and or the Court purposely denied him any notice. The situation at hand and the complexity of the matter with no proceeding legal arguments led to that result. Appellee immediately filed his Request for Speedy Trial, which he had planned on filing on that date.

Appellee claims in the July 20 hearing that he requested a bond pursuant to Article 17.151(1)(2) and noted in his brief the decision to deny Appellee a bond was "solely made by the Visiting Judge to that Court" and that the State did not oppose a bond. Other than the court's docket sheet entries and the representations by the attorneys from both sides that a hearing took place on July 20, we do not know for sure if the visiting trial judge denied Appellee a bond. What is clear is that Appellee was still in custody for the August 8 hearing.

*July 20, 2017 Hearing*

What we do know about the short hearing on July 20 based on a review of the briefs, court docket sheet, and the record of the discussion at the bench during the August 8 hearing (referring to the July 20 hearing) is the following: first, Appellee did not request a speedy trial during that hearing; and second, Appellee's competency was sufficiently raised by both parties such that the first County Court visiting judge ordered that he be evaluated before the next hearing on August 8. Because we do not have a record of the proceedings, it is unclear why the first visiting judge did not stay the proceeding consistent with Article 46B.004(d), which states, "[i]f the court determines there is evidence to support a finding of incompetency, the court, except as provided by Subsection (e) and Article 46B.005(d),

shall stay all other proceedings in the case." TEX. CODE CRIM. PROC. ANN. 46B.004(d). But he did not resolve any evidentiary matters. The second visiting judge likewise did not issue a stay consistent with the requirements of that statute.

The August 8 trial date that Appellee claims "cannot be shown anywhere in the record" is first listed on the court's docket sheet on July 21 (the handwriting is difficult to decipher, but the date is clear) and then again in an entry on July 24 that states "Set for trial" preceding the date August 8. Again, because there is no record from the first hearing, we rely on the trial court's docket entries to determine what might have taken place. Appellee claims he was illegally denied a bond in that hearing; however, on the Court's docket sheet there is an entry marked "7/20/17 Pretrial Release Inmate with PR Bond – Conditions Mental Health – GPS System, Waive fees, interview for Haven for Hope." Further down the same docket sheet is the following "7/24/17 – PR Bond – Waive Fees – May live at Haven for Hope, Set for trial August 8, 2017."

*August 8, 2017 Hearing*

The next entry on the docket sheet is on August 8 when the second visiting judge was presiding. Despite his argument that he knew nothing about the setting on that date, counsel for Appellee specifically stated during that hearing, "[w]e had the case, that day, set for today." Despite the entries on the docket sheet that he be evaluated and be released to Haven for Hope, it is uncontroverted that Appellee was still in custody on August 8, 2017. As a result, we can conclude on August 8 that (1) some notice existed that the case was set for trial on August 8; (2) the competency evaluation discussed on July 20 did not take place; (3) Appellee was never admitted to Haven for Hope; and (4) the most logical explanation for Appellee still being in jail was based on comments made by the second

visiting judge, who stated during the August 8 hearing: "This man has no place to live. Because of a prior suicide watch Haven for Hope will not take him."

Counsel for Appellee claims in his brief that he had no notice of the August 8 hearing and that the State immediately announced ready for trial. As noted, that is not consistent with the record before us. Although we can appreciate the fact that the second visiting judge wanted to move the docket, what occurred can only be described as a confusing hearing that included off-the-record conversations and unclear rulings that failed to follow our statutes and existing case law. The chronology is as follows: The hearing started with the trial judge asking Appellee a series of questions regarding his competency, wherein he seemed to be responsive and answered all questions in an intelligent manner. The trial judge then went off the record, so we do not know what took place. Once back on the record, counsel for Appellee immediately asserted his right to a speedy trial (with no motion filed), demanded a dismissal of the charges, and stated "I will file the official paperwork this afternoon as quickly as possible." The State responded by properly (1) requesting notice (the record reflects Appellee's attorney had not even filed such a motion); (2) announcing ready for trial; and (3) reminding the Court of the competency issues and concerns they had agreed upon with Appellee.[2]

At that point, the trial court immediately granted Appellee's speedy trial motion and ordered the parties to trial, but did not rule on the dismissal. Counsel for Appellee then told the court that he was ready for trial (which appeared untrue), but both he and the State had

---

[2] We note that counsel for Appellee admitted on the record that he did not think his client was competent to stand trial or take a plea and included that in his formal written motion for speedy trial. In other words, counsel for Appellee asked for a speedy trial while acknowledging his client was incompetent. A lawyer can't have his cake and eat it, too, by demanding a speedy trial, then having it granted, only to change his mind because the State announced ready, and then request a dismissal because his client was incompetent.

concerns about Appellee's competency. The trial judge then asked Appellee if he was competent. He responded that he was competent and was ready to go to trial. With nothing further from either side, the trial judge *sua sponte* stated "But I am going to overrule you. I am granting the speedy trial motion and I am dismissing the case" and then went off the record, so once again we don't know what took place.

Counsel for Appellee then pointed out that if the court ordered a competency evaluation, "that would take another month and he would be in jail for a full year." At that stage of the case, Appellee had served 112 days in jail. Our caselaw is clear that delays related to competency evaluations do not count against the State. *See Hull v. State*, 699 S.W.2d 220, 221-22 (Tex. Crim. App. 1985).

Nonetheless, after this exchange between the lawyers, the trial judge declared that Appellee "has spent the equivalent of a year in jail if you are giving him two for one. He is not competent. We can't try this case. . . .I am going to grant your motion for speedy trial, and I am going on the record saying State you're right. This is something we need to take care of in Court and the Court has no means to take care of it. We can't try him. It's just not right to leave him in jail" and proceeded to dismiss the case. The State then properly objected one more time to the form of relief being granted, which was followed with another discussion from the bench wherein the trial court stated, "I can't determine his competency, but obviously based on what his attorney has projected to us, he's not competent, but I am not a health care professional." By the end of the hearing, counsel for Appellee had twice stated his client was incompetent; the State had announced ready; and the judge had twice gone off the record, three times stated that Appellee was incompetent, one time stated that the State was correct, and ultimately dismissed the case.

The court of appeals affirmed the trial court's decision to dismiss the case on speedy trial grounds.. The precedent set by the court of appeals' published opinion allows a defendant to claim he has been presumptively prejudiced by the State's failure to provide a speedy trial far sooner than any standard this Court has ever recognized, even though the State announces ready for trial and has not been served with a speedy trial motion. The court of appeals relied heavily on both a 1979 Louisiana Supreme Court opinion and a Texarkana court of appeals opinion. *See Lopez*, 563 S.W.3d at 420-22; *Gray v. State*, 257 S.W.3d 825, 827-29 (Tex. App. – Texarkana 2008, pet. ref'd); *State v. Reaves*, 376 So.2d 136, 138 (La. 1979). The Louisiana case is not on point, and even if it were, we owe no deference to another state's high court opinion as we analyze our own statutes related to competency to stand trial. *See Reaves*, 376 So.2d at 138. The Texarkana court of appeals opinion is likewise not on point; there, the trial court concluded the defendant was competent, so no hearing was necessary – the complete opposite of this case. *Gray*, 257 S.W.3d at 827-29. Based on our review of the record and our analysis of Texas law, we reverse and vacate the decision of the court of appeals.

## ANALYSIS

The Sixth Amendment to the United States Constitution guarantees the accused in a criminal prosecution the right to a speedy trial. *Hopper v. State*, 520 S.W.3d 915, 923 (Tex. Crim. App. 2017) (citing U.S. CONST. amend. 6; *Vermont v. Brillon*, 556 U.S. 81, 89, 129 S.Ct. 1283 (2009)). The Texas Constitution provides the same guarantee. TEX. CONST. art. 1, § 10. As this Court has explained and the court of appeals here reiterated, an evaluation of a speedy trial claim includes a consideration of "the length of delay, the reasons for delay, to what extent the defendant has asserted his right, and any prejudice

suffered by the defendant." *Hopper*, 520 S.W.3d at 924 (citing *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972)). Moreover, "[t]he length of delay is, to some extent, a triggering mechanism, so that a speedy trial claim will not even be heard until passage of a period of time that is, on its face, unreasonable in the circumstances." *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003).

*Standard of Review*

We apply a bifurcated standard of review: an abuse of discretion standard for the factual components and a *de novo* standard for the legal components. *See State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999). To be clear, while an evaluation of the *Barker* factors includes fact determinations and legal conclusions, "the balancing test as a whole is a purely legal question that we review *de novo*." *Balderas v. State*, 517 S.W.3d 756, 767-68 (Tex. Crim. App. 2016) (citing *Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997). Because the State did not request findings of fact and conclusions of law, we imply all findings necessary to support the trial court's ruling if those findings are supported by the record. *See Balderas*, 517 S.W.3d at 767-68.

*Length of Delay*

In its first ground for review, the State asserts that the court of appeals erred by concluding that the 112-day delay was presumptively prejudicial. "Presumptive prejudice" "simply marks the point at which courts deem the delay unreasonable enough to trigger [further] enquiry." *State v. Munoz*, 991 S.W.2d at 821-22. To be clear, the length of delay is a "triggering mechanism" for analysis of the other *Barker* factors, and a court does not engage in the complete analysis unless a defendant alleges that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively

prejudicial' delay." *Doggett v. U.S.*, 505 U.S. 647, 651-52 (1992). We measure the delay from the time the defendant is formally accused or arrested to the time of trial. *See U.S. v. Marion*, 404 U.S. 307, 320-21 (1971).

There is "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months." *Barker*, 407 U.S. at 523. Indeed, the length of delay that will provoke an inquiry into the speedy trial factors "is necessarily dependent upon the peculiar circumstances of the case." *Zamorano v. State*, 84 S.W.3d 643, 648-49 (Tex. Crim. App. 2002) (quoting *Barker*, 407 U.S. 530-31). Such circumstances may include the nature of the charged offense, and whether the defendant can make bail or must await trial while confined in jail. *See Barker*, 407 U.S. at 519-20. And "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* at 531. Deliberate delay to hamper the defense weighs heavily against the State, while more neutral reasons like negligence or overcrowded courts weigh against the State but less heavily. *Hopper*, 520 S.W.3d at 924.

Although "[t]here is no set time element that triggers the analysis," *Cantu v. State*, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008), this Court and the courts of appeals have provided guidance. Generally, a delay of eight months to a year, or longer, is presumptively prejudicial and triggers a speedy trial analysis. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003); *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992). In felony sexual assault cases, this Court has held that a four-month delay is not sufficient while a seventeen-month delay is. *Phillips v. State*, 650 S.W.2d 396, 399 (Tex. Crim. App. [Panel Op.] 1983) (concluding 17-month delay in rape prosecution was presumptively prejudicial); *Pete v. State*, 501 S.W.2d 683, 687 (Tex. Crim. App. 1973) (concluding no

presumption of prejudice where defendant was charged with rape, incarcerated on a burglary conviction, and tried 4 months later).

In this case, from the time of his arrest to the August 8, trial date, Appellee had been in jail for almost four months. Appellee was charged first with a felony which the State refiled as a Class A misdemeanor. *See* TEX. PENAL CODE §§ 22.04(a), 22.01(a)(3), 22.01(c)(1). Appellee's pretrial incarceration was 112 days. The State declared it was ready to proceed on the same day counsel for Appellee first requested a speedy trial. Considering the totality of the circumstances, 112 days is not an extraordinary amount of time under *Barker v. Wingo*. Although the court of appeals counted potential future delays due to Appellee's competency and the necessity of a competency evaluation in its consideration of length of delay, such delays would not have been the fault of the State. *See Hull v.* State, 699 S.W.2d at 222; *State v. Lopez*, 563 S.W.3d 409, 421-23 (Tex. App. – San Antonio 2018, pet. granted). Based on the particular facts presented on this record, we hold that the delay here was not presumptively prejudicial and was thus insufficient to trigger an analysis of the remaining *Barker* factors. Moreover, even if the first Barker factor had been triggered, we conclude the trial court erred.

*Reasons for the Delay*

The State asserts in its second ground for review that the court of appeals erred by concluding the State was responsible for the delay. In considering reasons for delay, the State carries the burden of justifying the delay. *Cantu*, 253 S.W.3d at 280. While valid reasons for delay do not weigh heavily against the State, bad-faith delays do. *Id.* A more neutral reason, like negligence, will weigh less heavily. *Id.* And an absence of an assigned

reason will be considered "neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay." *Dragoo*, 96 S.W.3d at 214.

Here, the delay constituted a 112-day period from Appellee's arrest to his August 8, 2017 trial date. The 112-day period from arrest to trial date was not a bad-faith delay. Rather, it was a reasonable delay based on the State's discretion to dismiss Appellee's felony assault charge and refile it as a misdemeanor. In the trial court, the State and Appellee disagreed over whether there was evidence showing Appellee's mother suffered a bodily injury that would support a felony charge, but as we have pointed out there was no evidentiary hearing to support any of the factual claims asserted by Appellee. We disagree with the court of appeals that the trial court could have impliedly found that the State's decision to file a felony charge was negligent. As the State pointed out in its brief, the only statements supporting this conclusion were unsworn statements by counsel for Appellee and thus not competent evidence. *See Gonzalez v. State*, 435 S.W.3d 801, 811 (Tex. Crim. App. 2014) (holding that counsel's statements without personal knowledge are not evidence); *State v. Guerrero*, 400 S.W.3d 576, 585 (Tex. Crim. 2013) (concluding trial counsel's statements may only be considered if based on first-hand knowledge).The State here simply exercised its discretion and filed what it deemed to be the most appropriate charge based on the evidence it had collected.

We note that the court of appeals also considered potential future delays due to questions about Appellee's competency in its evaluation of the second *Barker* factor. But, as we have indicated, such delays do not count against the State. *See Hull*, 699 S.W.2d at 222; *Lopez*, 563 S.W.3d at 421-23. The record does not support an inference against the

State regarding future delay. Thus, we conclude in the State's favor on its second ground for review.

*Defendant's Assertion of the Right*

In its third ground for review, the State argues there is "no evidence" of Appellee asserting the right to a speedy trial. A defendant's "assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Zamorano*, 84 S.W.3d at 651. As the State pointed out and the court of appeals acknowledged, typically filing for dismissal weakens a speedy-trial claim because it suggests a desire to have no trial instead of speedy one. *See Cantu*, 253 S.W.3d at 283. But "in some cases, defense counsel may legitimately feel that a long delay has caused a client so much prejudice that dismissal is warranted, even if the State is belatedly ready to move promptly." *Phillips*, 650 S.W.2d at 401. "Each case must turn on its own facts, and the particular relief a defendant seeks is but one factor to consider." *Id.*

Here, the trial date was set for August 8, and Appellee asserted his right to a speedy trial on that same date, first by orally asserting his right and also by filing a written Motion for Speedy Trial after the hearing, all the while conceding his client was incompetent. The record supports the fact that he did not deliberately fail to request a speedy trial. At the same time, though, the State announced ready for trial. Only then did counsel for Appellee move to dismiss. Thus, although Appellee technically requested a speedy trial, his request appears disingenuous, because he conceded at the onset his client was incompetent. Thus, we find in favor of the State on its third ground for review.

*Prejudice to the Defendant*

The fourth *Barker* factor examines whether and to what extent the delay has prejudiced the defendant. We did not grant on this point of error and thus do not include it in our analysis.

*Balancing the Factors*

We have evaluated the first three factors set out in *Barker v. Wingo* and conclude they weigh in favor of the State. The record does not support the trial court's implied finding that the delay here violated Appellee's constitutional right to a speedy trial.

## CONCLUSION

The facts here are not typical. The State used its discretion to dismiss a felony charge and instead file a Class A misdemeanor charge against Appellee. A visiting trial judge ordered a competency evaluation that – for reasons that are not clear on this record – failed to take place between July 20 and August 8.  When counsel for Appellee moved for speedy trial, the State announced ready in front of the second visiting judge. But the second visiting judge then stated Appellee was incompetent, and rather than staying the case, which was statutorily required, went on to dismiss it. The limited record before us shows that Appellee was incarcerated for 112 days, but is void of any support for the trial court's implied finding that the delay here violated Appellee's constitutional right to a speedy trial. Our evaluation of the *Barker* factors leads us to conclude that the delay here did not violate Appellee's constitutional right to a speedy trial.  Accordingly, we reverse the decision of the court of appeals and remand to the trial court for further proceedings consistent with this opinion.

FILED:      SEPTEMBER 29, 2021

PUBLISH