

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

Nos. 04-18-00478-CR & 04-18-00479-CR

The **STATE** of Texas,
Appellant

v.

Miguel **MELENDEZ**,
Appellee

From the 451st Judicial District Court, Kendall County, Texas
Trial Court Nos. 6467 & 6468
Honorable Bill Palmer, Judge Presiding

Opinion by:  Luz Elena D. Chapa, Justice

Sitting:  Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice

Delivered and Filed: August 14, 2019

AFFIRMED

The State appeals the trial court's orders dismissing two indictments charging Miguel Melendez with burglary of a habitation. The record supports the trial court's conclusion that Melendez's right to a speedy trial was violated. We therefore affirm the trial court's orders.

## BACKGROUND

Because these appeals concern the timeline of facts and trial court proceedings, we set out the timeline of events in these cases:

- On November 24, 2014, Melendez allegedly went to a residence, entered without the effective consent of the owners, and committed or attempted to commit aggravated assault with "a wooden rod."

- On December 2, 2014, Melendez was arrested and released on a $75,000 bond.

- In February 2016, a material defense witness, who was one of the residents at the house on the night of the alleged burglary, died.

- On October 10, 2017, almost three years after Melendez was arrested, a grand jury charged Melendez in two indictments with burglary of a habitation. Both indictments alleged the same incident, but each alleged a different owner of the residence.

- On November 22, 2017, Melendez surrendered to authorities pursuant to a capias, and he posted an additional $30,000 bond.

- In December 2017 and January 2018, status hearings in the cases were reset, once without explanation and once because counsel was "called to federal court."

- On January 24, 2018, Melendez filed motions to dismiss on speedy trial grounds and a motion to quash the indictments on double jeopardy grounds.

- The status hearings were reset three more times. Melendez's attorney signed each of these notices, and the State's attorney did not. The record does not indicate whether the hearings were reset upon either party's request.

- On June 7, 2018, the parties were notified a pretrial hearing was set for June 21, 2018.

- On June 21, 2018, the State filed motions for leave to amend the indictments, and the trial court heard Melendez's motions, granted Melendez's speedy trial motions, and signed orders dismissing the indictments.

The State timely appealed both orders of dismissal. This court consolidated the appeals for briefing and disposition. The State's two issues are that the trial court erred by dismissing the indictments against Melendez on speedy trial and due process grounds.

## THE RIGHT TO A SPEEDY TRIAL

A person accused of a criminal offense has the right to a speedy trial. *Hopper v. State*, 520 S.W.3d 915, 923 (Tex. Crim. App. 2017). When the right to a speedy trial "has been deprived," a dismissal of the charging instrument is the "only possible remedy." *Barker v. Wingo*, 407 U.S.

514, 522 (1972). To determine whether the accused has been deprived of his right to a speedy trial, courts apply four factors set out in *Barker*: "(1) the length of delay, (2) the reasons for delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant." *Hopper*, 520 S.W.3d at 918. "No one factor possesses 'talismanic qualities,' thus courts must 'engage in a difficult and sensitive balancing process' in each individual case." *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002) (quoting *Barker*, 407 U.S. at 533).

In reviewing a dismissal on speedy trial grounds, we apply a bifurcated standard of review. *Id.* "When reviewing the trial court's application of the *Barker* test, we give almost total deference to the trial court's historical findings of fact that the record supports, and we draw reasonable inferences from those facts necessary to support the trial court's findings." *Balderas v. State*, 517 S.W.3d 756, 767–68 (Tex. Crim. App. 2016). "An appellate court reviewing a trial court's ruling on a motion to dismiss for want of a speedy trial must do so in light of the arguments, information, and evidence that was available to the trial court at the time it ruled." *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003).

"Review of the individual *Barker* factors necessarily involves fact determinations and legal conclusions, but the balancing test as a whole is a purely legal question that we review *de novo*." *Balderas*, 517 S.W.3d at 768. Because Melendez prevailed on his speedy trial claim, "we presume the trial court resolved any disputed fact issues in his favor." *See State v. Ritter*, 531 S.W.3d 366, 371 (Tex. App.—Texarkana 2017, no pet.) (citing *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999)). When, as here, the State did not request, and the trial court did not make, findings of fact and conclusions of law, we will imply all findings necessary to support the trial court's ruling if those findings are supported by the record. *Id.*

## A. Length of the Delay

The first factor we consider is whether the length of the delay is presumptively prejudicial to trigger an analysis of the remaining factors. *Barker*, 407 U.S. at 530; *Hopper*, 520 S.W.3d at 924. The length of delay is measured from the time the defendant is arrested or formally accused, whichever is first, until the trial or the defendant asserts his right to a speedy trial. *Zamarripa v. State*, 573 S.W.3d 514 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

The length of the time from the day Melendez was arrested, December 2, 2014, until he asserted his right to a speedy trial at the June 21, 2018 pretrial hearing, was forty-two months and nineteen days. In its brief, "the State admits that the delay is presumptively improper and that further speedy-trial analysis is necessary." *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992) (noting a one-year delay is presumptively prejudicial); *Shaw*, 117 S.W.3d at 888–89 (same). That being said, we proceed to analyzing the remaining three *Barker* factors.

## B. Reasons for Delay

"The burden of justifying the delay is on the State." *Voda v. State*, 545 S.W.3d 734, 742 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008)). "In evaluating the State's reason for the delay, we assign different weights for different reasons. Valid reasons for delay do not weigh against the State, whereas bad-faith delays weigh heavily against the State." *Id.* (internal citations omitted). "A more neutral reason, such as negligence, will weigh less heavily against the State." *Id.* A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. *Zamorano*, 84 S.W.3d at 649. Neutral reasons, such as negligence or overcrowded courts, weigh against the State, although less heavily, because the responsibility for such circumstances rests with the government, not the defendant. *Barker*, 407 U.S. at 531. Although such reasons are "neutral," they are nevertheless "unacceptable reasons for delaying a criminal prosecution." *Doggett*, 505 U.S. at 657.

At the hearing on Melendez's speedy trial motions, the State provided three reasons for the delay. First, the State explained there was a delay with the police department in investigating and preparing a proper offense report. The prosecutor represented to the trial court:

> I can tell the Court as an officer of the Court that it appears to me that this [case] was initially submitted to what at the time was the 216th District Attorney's office in about May of 2016. It appears to me that it was reviewed and sent back because they did not like the way that it had been charged by the police department and were asking for additional evidence.

Second, the State explained, "[A]s the Court is well aware, in January of 2017, the 451st Court and District Attorney's office were created. And we inherited approximately six banker's boxes worth of cases." The State denied the delay was in bad faith. Third, the State argued Melendez had acquiesced to resetting the hearings.

The State provided no explanation for the delay from the date of Melendez's arrest, December 2, 2014, to May 2016, when the case was "initially submitted to . . . 216th District Attorney's office." The State therefore did not satisfy its burden to justify this presumptively prejudicial year-and-a-half delay. This delay weighs against the State. *See Rivera v. State*, 990 S.W.2d 882, 889 (Tex. App.—Austin 1999, pet. ref'd) ("[I]f the record is silent or the reasons given are insufficient to excuse the delay, the appellate court must presume that no valid reason for delay existed.").

The State explained the reason for the delay from May 2016 to January 2017 was not due to bad faith, but to inadequate policework. Inadequate policework is a neutral, yet unacceptable reason for a delay that weighs against the State. *See Doggett*, 505 U.S. at 657; *accord Luke v. State*, No. 05-02-01543-CR, 2003 WL 1994850, at *2 (Tex. App.—Dallas May 1, 2003, no pet.) (not designated for publication); *Sims v. State*, No. 08-00-00067-CR, 2001 WL 85156, at *2 (Tex. App.—El Paso Feb. 1, 2001, no pet.) (not designated for publication).

The State explained the reason for the delay from January 2017 to October 10, 2017, the day Melendez was indicted, was a caseload caused by the creation of a new district court and district attorney's office. It is unclear why the creation of a new district court and district attorney's office, which are efforts to reduce backlog and the burden on existing courts and prosecuting authorities, justifies a delay. On appeal, the State seeks to clarify, presenting new and different information not presented to the trial court. We may not consider the information the State presents for the first time on appeal. *See Shaw*, 117 S.W.3d at 889. Nevertheless, such a backlog is an issue of "overcrowded courts," which is a neutral, yet unacceptable reason that weighs against the State because the ultimate responsibility for such circumstances rests with the government, not the defendant. *See Doggett*, 505 U.S. at 657; *Zamorano*, 84 S.W.3d at 649.

The State claims the delay from the date of the indictments, October 10, 2017, to the date of the speedy trial hearing, July 21, 2018, weighs against Melendez. The State argues this delay was due to Melendez "agree[ing] to resets for another five months when the State did not." Although the record does not support that Melendez requested the resets, the record shows, at the very least, that Melendez acquiesced to the resets. "[A]cquiescence in further delay . . . weighs against finding a violation" of a defendant's right to a speedy trial. *Zamarripa*, 573 S.W.3d at 525.[1]

In sum, the unexplained delay from December 2, 2014, to May 2016, weighs against the State. The delay due to the neutral reasons such as inadequate police work and docket overcrowding—from May 2016, to October 10, 2017—weighs against the State slightly. Because Melendez acquiesced to resetting the case, the delay from October 2017 to June 2018 weighs

---

[1] We also note Melendez had moved to quash the indictments because they charged him for the same alleged burglary in violation of his rights under the Double Jeopardy Clause. The State had filed a motion to amend the indictments, and the trial court determined at the June 21, 2018 pretrial hearing that Melendez would need to be re-indicted. In *State v. Lopez*, this court considered an inevitable future delay caused by such negligence as weighing against the State. 563 S.W.3d 409, 423–24 (Tex. App.—San Antonio 2018, pet. granted). Because the Court of Criminal Appeals has granted review, and an issue is whether courts may consider inevitable future delays in analyzing a speedy trial claim, we note this inevitable future delay, but we do not consider it in our analysis.

against Melendez for that period of time. *See id.* In its brief, the State all but admits that the pre-indictment reasons for the delay weigh against the State, but not heavily because there is no bad faith. We agree, and conclude this factor weighs against the State.

## C. Assertion of the Right

We next must consider whether Melendez asserted his right to a speedy trial. *Barker*, 407 U.S. at 530; *Hopper*, 520 S.W.3d at 924. Generally, the assertion-of-the-right factor concerns whether a defendant asserted his right to a speedy trial in the trial court as opposed to the first time on appeal. *See Barker*, 407 U.S. at 531-32. "Of course, the defendant has no duty to bring himself to trial; that is the State's duty." *Zamorano*, 84 S.W.3d at 651. "This does not mean that the defendant has *no* responsibility to assert his right to a speedy trial." *Id.* "[T]he defendant's assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id.*

The State argues the Court of Criminal Appeals has noted requesting a dismissal instead of a speedy trial undermines the weight of a defendant's assertion of his right to a speedy trial. *Phillips v. State*, 650 S.W.2d 396, 401 (Tex. Crim. App. [Panel Op.] 1983). "This is not to say, however, that asking only for dismissal will result in a 'waiver,'" of a speedy trial claim." *Id.* "In some cases, defense counsel may legitimately feel that a long delay has caused a client so much prejudice that dismissal is warranted, even if the State is belatedly ready to move promptly." *Id.* "Each case must turn on its own facts, and the particular relief a defendant seeks is but one fact to consider." *Id.* We also consider whether there is anything "to suggest that appellant deliberately failed to move for a speedy trial because of tactical reasons." *See id.* (citing *Barker*, 407 U.S. at 534-36); *accord Cantu*, 253 S.W.3d at 283.

Here, Melendez asserted his right to a speedy trial in the trial court by filing his speedy trial motion and raising the issue at the June 21, 2018 pretrial hearing. Melendez's assertion of his

speedy trial right "is entitled to strong evidentiary weight." *See Zamorano*, 84 S.W.3d at 651. The State suggests the weight of Melendez's assertion of his right is weakened because Melendez requested dismissal instead of a speedy trial. *See Cantu*, 253 S.W.3d at 283. Although the Court of Criminal Appeals has noted this can be a consideration in some cases, the weight we must give to Melendez's assertion of his right to a speedy trial is not weakened significantly because Melendez "ha[d] no duty to bring himself to trial; that [wa]s the State's duty." *Zamorano*, 84 S.W.3d at 651. And, a dismissal of the charging instrument is the "only possible remedy" when the right to a speedy trial "has been deprived." *Barker*, 407 U.S. at 522. Furthermore, it was undisputed that the indictments were defective. Thus, it would make little sense to impose a strict requirement on Melendez, in asserting his right to speedy trial, to assist the State proceed to trial on defective indictments.

The presumptively prejudicial delay in this case occurred before the indictments. Before he was indicted, Melendez was not able to file a motion for speedy trial to assert his right. "[O]ne cannot file a motion for a speedy trial until formal charges are made," but "the right to [a speedy trial] can be asserted in other ways" before an indictment is filed, such as inquiring into the status of the case. *Cantu*, 253 S.W.3d at 283 & n.47. Melendez's burden of proof as to the assertion of his right "varie[d] inversely" with the State's degree of culpability for the delay in light of the delay's protractedness. *See id.* at 280; *Doggett*, 505 U.S. at 657 ("[O]ur toleration of such negligence varies inversely with its protractedness."). The delay in this case cannot be explained by the complexity of the nature of the offense. *See Barker*, 407 U.S. at 531 ("[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."). Under the facts of this case, we decline to impose a requirement that, before asserting his right to a speedy trial had been violated, Melendez was required to encourage the State to secure indictments against him. Melendez satisfied his burden in the trial court to assert his right

to a speedy trial had been violated, the only remedy for which the United States Supreme Court has held is dismissal. *See id.* at 522. Although Melendez could have asserted his right in other ways, we disagree with the State that Melendez's failure to urge the State to expedite efforts to indict him causes this factor to "weigh[] heavily in favor of the State."

## D. Prejudice to the Defendant

We assess prejudice to the defendant "in light of the interests the right to a speedy trial was designed to protect," including "limiting the possibility that the defense will be impaired." *Hopper*, 520 S.W.3d at 924. Impairing the defense is the "most serious" type of prejudice "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532. "[P]roof of actual prejudice is not required when the delay is excessive, because such a delay 'presumptively compromises the reliability of a trial in ways that neither party can prove or even identify.'" *Harper v. State*, 567 S.W.3d 450, 460 (Tex. App.—Fort Worth 2019, no pet.) (quoting *Shaw*, 117 S.W.3d at 890). When a defendant makes a *prima facie* showing of prejudice, the State has the burden to prove "the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973).

Melendez asserted the prejudice he suffered was the death of a material witness: Duke Berry. At the pretrial hearing, Melendez identified his defensive theory, which was that Berry gave him consent to enter the home. *See Hopper*, 520 S.W.3d at 918, 923 (agreeing with court of appeals' reasoning that defendant should identify his defensive theory). Melendez elaborated as to why Berry was likely to testify he had the authority to give Melendez consent to enter the home. *See id.* (agreeing defendant should explain likely substance of lost evidence). Berry had lived at the house for seven years; there was no sign of forced entry; and Melendez "had always been

welcomed into that house by Duke Berry; that Duke Berry had, in fact, initiated his coming over in part that evening and allowed him in the house -- invited him into the house."

The State argues this assertion of prejudice is "only based on unsubstantiated assertions made by defense counsel and not supported by the record." We reject the State's argument for three reasons. First, in the trial court, Melendez offered to put on evidence in support of his prejudice claim, but the State did not dispute any of the supporting facts advanced by Melendez, including facts that Berry died during the State's unexplained delay, there were no signs of forced entry, and Berry likely would have testified he lived at the residence at the time of the alleged offenses, had authority to give consent for Melendez to enter the home, invited Melendez into the home numerous times before, and invited Melendez over on that evening. Second, the State suggested the trial court should consider counsel's arguments as factual representations because the attorneys were making representations, in the prosecutor's words, as "officer[s] of the Court." *See Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999). Third, our standard of review requires us to consider "the arguments, information, and evidence that was available to the trial court at the time it ruled." *Shaw*, 117 S.W.3d at 889. We hold the record supports the trial court's implied determination, based on the information and arguments available to the trial court, that Melendez made a *prima facie* showing of prejudice. *See id.* The State does not argue in its brief that it satisfied its burden in the trial court to prove Melendez "suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *See McKenzie*, 491 S.W.2d at 123; *see also* TEX. R. APP. P. 38.1(i).

### E. Balancing the Factors

Although Melendez acquiesced to resetting hearings after he was indicted, the State provided no explanation for the year-and-a-half delay before it indicted Melendez, during which time a material defense witness died. The State was responsible for another pre-indictment delay

that lasted over a year. These delays, although for neutral reasons, were "unacceptable." *See Doggett*, 505 U.S. at 657. In the trial court, Melendez asserted the delay violated his right to a speedy trial, and his failure to ask the State to secure indictments against him or to bring him to trial more quickly do not substantially weaken the weight we must give to Melendez's assertion of his right in the trial court. *See Zamorano*, 84 S.W.3d at 651. Furthermore, when he was first able to request relief from the trial court for a violation of his right to a speedy trial, a material defense witness had already died. *See Doggett*, 505 U.S. at 657. The right to a speedy trial is to limit such a "possibility that the defense will be impaired," which is the most significant concern the right to a speedy trial addresses. *See Barker*, 407 U.S. at 532; *Hopper*, 520 S.W.3d at 924. When the right to a speedy trial has been violated, a dismissal of the charging instrument is the "only possible remedy." *Barker*, 407 U.S. at 522.

## CONCLUSION

We hold the record supports the trial court's determination that Melendez's right to a speedy trial was violated. Because dismissal of the indictments was the "only possible remedy," we conclude the trial court did not err by granting Melendez's motion to dismiss the indictments on speedy trial grounds. *See id.* We therefore affirm the trial court's orders granting Melendez's motions and dismissing the indictments against him.[2]

Luz Elena D. Chapa, Justice

DO NOT PUBLISH

---

[2] In a separate issue, the State argues the trial court's orders cannot be supported on due process grounds. Because we agree the speedy trial grounds suffice to support dismissal of the indictments, we do not address the State's second issue. *See* TEX. R. APP. P. 47.1.